2000 OK 93

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Scott L. TULLY, Respondent.**

**SCBD No. 4442.**

Supreme Court of Oklahoma.

Nov. 28, 2000.

·Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for the Complainant.

Stephen H. Foster, Bristow, Oklahoma, Co-counsel for the Respondent.

WINCHESTER, J.

¶1 Oklahoma Bar Association disciplinary proceedings were brought against Respondent attorney, Scott L. Tully on one count of professional misconduct. Two subsequent counts were later added and listed in the present case.

¶2 Hearings were held before the Professional Responsibility Tribunal and the Tribunal recommended Respondent be suspended from the practice of law for 30 days. Complainant, in its brief, recommends imposition of the most severe discipline or at the very least, suspension from the practice of law for two years and one day.

¶3 Due to the serious nature of each count in this multi-count complaint, we find Respondent should be suspended from the practice of law for two years and one day.

¶4 The complaint against Respondent consists of the following. In April 1997, Respondent received a Temporary Total Disability (TTD) check made payable to both the Respondent and client Donald Luke for five thousand, nine hundred and sixty-four dollars ($5,964.00). Respondent neither advised the Firm that he had received the TTD check for Luke, nor did he deposit the check into the Firm's client trust account. Respondent advised Luke that the Firm had waived the attorney fees and gave him the TTD check. He then asked Luke to write a check for five hundred, ninety-six dollars and forty cents ($596.40) because the Firm had started the final part of Luke's case and needed money. Respondent specifically advised Luke to leave the payee part of the check blank. Luke did not have a checking account and opened one in order to write a check to the Respondent.

¶5 Respondent then wrote in his own name as the "payee" and tendered it to the Bank of Oklahoma for deposit into his personal account on or about April 27, 1997.

¶6 In June 1997, Respondent advised his legal assistant that with regard to Luke's TTD benefits, "we will waive our fee because the client has been jerked around and he really needs the money." Then in the presence of his legal assistant, Respondent asked Daniel Lowe, a partner of the Firm, for a fee waiver in the Luke case and Lowe verbally approved the waiver.

¶7 Respondent did not advise the Firm about asking Luke to write a check for ten percent of the TTD check he had delivered to Luke. He also did not advise the firm that he had made the check payable to himself and deposited into his own personal account.

¶8 Respondent was terminated from the Lowe firm in May 1998 and Luke's case was then handled by another attorney at the firm, Craig Armstrong. In June 1998, Armstrong, at the conclusion of the matter, prepared a case summary wherein he deducted the customary ten percent TTD attorney fee, unaware that the fees had been waived.

¶9 Luke then brought it to the Firm's attention that he had previously paid Respondent $596.40 and that Respondent had written in his name as "payee." Lowe then mailed a written grievance to the Office of the General Counsel, Oklahoma Bar Association regarding the TTD attorney fee and Respondent's actions in the Luke case.

¶10 Respondent was arrested in Broken Arrow in April 1999 for felonious possession with intent to distribute a controlled danger-

ous substance, possession of a firearm during commission of a felony and misdemeanor carrying a concealed weapon. Police officers found approximately 16 grams of methamphetamine and a loaded .22 revolver on the Respondent.

¶ 11 In August 1999, the Respondent pled "No Contest" to one count of Felonious Possession of a Controlled Dangerous Substance and one misdemeanor count of Carrying a Concealed Weapon. In October 1999, the Respondent was sentenced and placed on probation with a two year deferral until October 2001. Probation conditions included submitting to random urinalysis checks, attending Alcoholics Anonymous and Narcotics Anonymous meetings, performing 100 hours of community service within six months and attending an Anger Management course.

¶ 12 In November 1999, Respondent testified in his deposition that it was his "perception" that methamphetamine was given to him by a client's boyfriend as payment for his legal services on a visitation matter. He testified that although he was still representing the client, he no longer received drugs from her boyfriend as payment. Respondent also testified that he had been "clean" since his arrest and that he had not advised Complainant of his drug arrest because he had been advised not to do so.

¶ 13 Count three alleges the Respondent engaged in conduct prejudicial to the administration of justice. Based on the evidence presented, the PRT found that on or about June 18, 1999, the Respondent and Luke discussed Respondent's repaying the $596.40

to Luke. In July, Luke and the Respondent agreed that Luke would accept $400 as full payment. Respondent prepared a letter to the Complainant, which Luke signed, stating that the miscommunications between Luke and the Respondent had been resolved, that Luke did no longer wish to pursue the Complaint against Respondent and that he did not wish to participate in Complainant's pursuit of the Complaint. Respondent then sent the letter to Complainant. Respondent also prepared a Release for Luke to sign. Luke was not represented by independent legal counsel and Respondent did not advise him to obtain the advice of counsel regarding the transaction.

## CONCLUSIONS OF LAW

¶ 14 Count I–The PRT found that Respondent's conduct violates Rule 8.4(c)[1] of the Oklahoma Rules of Professional Conduct. Respondent's request and receipt of the $596.40 check, whether for a fee he was not entitled to receive, or for continued litigation expenses, violated Rule 8.4(c) ORPC and Rule 1.3[2] of the Rules Governing Disciplinary Proceedings (RGDP). The PRT also found that Respondent's conduct is not a violation of Rule 1.15(b) or (c)[3] ORPC since the check was delivered to the person entitled to it, the client. We agree with these conclusions.

¶ 15 When considering the mishandling of funds, this Court has employed three levels of culpability: (1) commingling; (2) simple conversion; and (3) misappropriation. *State ex rel. Oklahoma Bar Association v. Meek,* 1994 OK 118, ¶ 9, 895 P.2d 692, 698. Disci-

1. "It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

2. "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or a misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

3. (b) "Upon receiving funds or other property in which a client or third person has an interest, a

lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

(c) "When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

pline has extended from censure to disbarment, depending in large part on the degree of harm to the client.

¶ 16 A lawyer has commingled funds when client funds are combined with the lawyer's personal funds. *State ex rel. Oklahoma Bar Association v. Johnston,* 1993 OK 91, ¶ 22, 863 P.2d 1136, 1144. In *Johnston,* we found an attorney had committed commingling when he withdrew trust account funds intended for his client's medical bills and placed them in his personal account. For this and other acts of misconduct, Johnston was suspended for four months.

¶ 17 Simple conversion occurs when the attorney uses a client's money for some purpose other than that for which it was intended. Rule 1.4(b) RGDP. In *State ex rel. Oklahoma Bar Association v. Farrant,* 1994 OK 13, 867 P.2d 1279, the Respondent committed simple conversion when he applied a payment from a client, intended for a private investigator's services, to his own fees. That private investigator eventually instituted a collection action against the client. For this and other infractions, the attorney was suspended from the practice of law for one year.

¶ 18 Misappropriation occurs when an attorney purposely deprives a client of money by way of deceit and fraud. A lawyer who intentionally inflicts grave economic harm through mishandling clients' funds has committed the most grievous degree of offense, which mandates disbarment. *Johnston,* 1993 OK 91, ¶ 25, 863 P.2d at 1145. In *State ex rel. Oklahoma Bar Association v. Raskin,* 1982 OK 39, 642 P.2d 262, the Respondent was disbarred after he used client funds to pay his own mortgage and car payments. That Respondent's misconduct caused the IRS to place a lien on the client's home and property.

¶ 19 The economic consequences for Mr. Luke do not appear to be as severe as in *Raskin,* however, Respondent did purposely deprive his client of money by way of deceit and fraud. This fraud and deceit propels the Respondents actions beyond the level of simple conversion and into the realm of misappropriation. It might be argued that the $596.40 was merely the fee due to the Respondent, but the Respondent took deliberate action at the law firm to have the fees waived for his client. The Respondent's later action in giving Luke $400 illustrates that in his mind the money rightfully belonged to the client.

¶ 20 Count II–The conviction and admission of the Respondent to using illegal drugs is a violation of Rule 8.4(b)[4] and shows a lack of professionalism and respect for the law. The stipulated facts reveal a violation of the mandatory provisions of Rules 8.1(b)[5] and 8.4(a)[6] (b), (c), ORPC and Rules 1.3 and 5.2[7] RGDP.

---

4. It is professional misconduct for a lawyer to:
. . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

5. (b) "An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

6. "It is professional misconduct for a lawyer to:
. . .
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

7. "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or in the case of an investigation instituted on the part of the General Counsel or the Commission without filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital

¶ 21 Count III–By the stipulated agreement of Respondent and Complainant, the Respondent violated the mandatory provisions of Rules 1.8(h) and 8.4(a) and (d), ORPC and Rule 1.3, RGDP.

¶ 22 The Respondent does offer several mitigating circumstances that have been taken into account:

The Respondent has been practicing law in Oklahoma since 1990 and has no prior history of discipline for professional misconduct.

Respondent suffers from a substance abuse and alcohol problem.

Respondent has taken steps to address his addiction through Lawyers Helping Lawyers and participating in Alcoholics Anonymous and Narcotics Anonymous three times a week.

There is no evidence that other than the incident involving Mr. Luke and the $596.40 that any of the Respondent's clients have suffered any damages, monetary or otherwise or that any of the Respondent's clients have not been properly represented.

■ ¶ 23 An ocean separates the recommendations of the PRT and the Bar Association. While this Court finds the PRT's recommendation of a 30–day suspension unacceptable, so too do we find the disbarment recommendation from the Bar. The Respondent violated several Rules of Professional Conduct, however, discipline is not intended to be a punishment, but to protect the public and purify the Bar. This Court conducts a *de novo* review and is not bound by the recommendation of either the PRT or the Bar Association. *State ex rel. Oklahoma Bar Association v. McMillian*, 1989 OK 16, ¶ 5, 770 P.2d 892, 894. A suspension of two years and one day is adequate notice that this court does not condone such acts. *State ex rel. Oklahoma Bar Association v. Denton*, 1979 OK 116, ¶ 8, 598 P.2d 663. The decision is intended to deter the respondent from similar future conduct and as a restraining vehicle on others who might consider committing similar acts. *State ex rel. Oklahoma Bar*

*Association v. Todd*, 1992 OK 81, 833 P.2d 260.

### Costs

¶ 24 The Respondent is suspended for two years and one day beginning on the effective date of this opinion and is ordered to pay the costs associated with this matter in the amount of $2,279.18 within 90 days of the effective date of this opinion.

¶ 25 **All Justices Concur.**

of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."