2007 OK 31

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**John Barry ALBERT, Respondent.**

**OBAD No. 1686.**
**SCBD No. 5299.**

Supreme Court of Oklahoma.

May 15, 2007.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

David B. Autry, Oklahoma City, OK, for Respondent.

KAUGER, J.

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, John Barry Albert (attorney/respondent), with eleven counts of professional misconduct resulting from irresponsible and neglectful representation of clients. The Bar Association alleged that the attorney's actions involved ineffective communication with clients, neglecting clients, mishandling cases, and failing to appear in court in behalf of clients in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.16, 3.2, 8.1(b), and 8.4(a) and (d) of the Rules of Professional Conduct[1] and Rules

---

1. Rule 1.1, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Rule 1.3, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 1.4, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 1.5, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides in pertinent part:

(a) A lawyer's fee shall be reasonable....

Rule 1.16, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides in pertinent part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: ...

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client ...

Rule 3.2, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

1.3, 5.2, and 10 of the Rules Governing Disciplinary Proceedings.[2] The Bar Association also sought an interim suspension of the attorney pursuant to Rule 6.2A of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001 Ch. 1, App. 1–A [3] alleging that he was incapable of practicing law due to drug and alcohol abuse. We suspended him on April 24, 2006. Upon a *de novo* review,[4] we hold that: 1) the attorney met the requisite burden of proof necessary for reinstatement; 2) the attorney's misconduct warrants discipline of a retroactive suspension from the practice of law from March 9, 2006, until the day this opinion is issued; and 3) attorney is responsible for partial payment of costs in the amount of $912.00 to be paid in three monthly installments beginning 90 days after this opinion is issued.[5]

> Rule 8.1(b), Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A provides:
>> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not . . .
>> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.
>
> Rule 8.4, Rules of Professional Conduct, 5 O.S. 2001 Ch. 1, App. 3–A provides in pertinent part:
>> It is professional misconduct for a lawyer to:
>> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .
>> (d) engage in conduct that is prejudicial to the administration of justice . . .

2. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides:

> The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides in pertinent part:

> . . . The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

Rule 10 *et seq.*, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A governs suspension for personal incapacity to practice law. Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A defines "personally incapable of practicing law" as:

> (a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law;
> (b) Active misfeasance or repeated neglect of duty in respect to the affairs of a client, whether in matters pending before a tribunal or in other matters constituting the practice of law;
> (c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.

3. Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A provides in pertinent part:

> . . . The General Counsel, with the concurrence of the chairperson or vice-chairperson of the Professional Responsibility Commission, upon receipt of sufficient evidence demonstrating that a lawyer subject to these Rules has committed conduct in violation of the Oklahoma Rules of Professional Conduct, or is personally incapable of practicing law as set forth in Rule 10 hereof, and where such conduct poses an immediate threat of substantial and irreparable public harm, may file a verified complaint in accordance with Rule 6 hereof requesting interim suspension and other appropriate relief . . .

4. *State ex rel. Oklahoma Bar Ass'n v. Phillips*, 2002 OK 86, ¶ 2, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Erickson*, 2001 OK 66, ¶ 14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel*, 2001 OK 42, ¶ 13, 25 P.3d 909; *State ex rel. Oklahoma Bar Ass'n v. Smolen*, 2000 OK 95, ¶ 7, 17 P.3d 456.

5. Rule 6.13, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App. 1–A provides in pertinent part:

> Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Respondent became a member of the Oklahoma Bar Association in 1992. He worked as a public defender for three years before going into private practice in which he represented mostly criminal defendants. According to the attorney, in March and April of 2005, his life began to crumble when he started drinking heavily and abusing cocaine. It was during this time that respondent began avoiding clients and neglecting cases. He attributes his drug and alcohol abuse and client neglect to the way in which he handled marital problems and the death of his father.

¶ 3 On April 29, 2005, the Bar Association received the first of eleven grievances from respondent's clients (spanning from April of 2005 to March of 2006) regarding his neglectful representation. After an in-court intervention on March 9, 2006, respondent entered Valley Hope treatment center in Cushing, Oklahoma, to receive treatment for alcohol and cocaine abuse. On March 24, 2006, the Bar Association filed a complaint against the attorney with an application for an order of emergency interim suspension.[6]

¶ 4 The application alleged that the attorney was incapable of practicing law as defined by Rule 10.1(a)(b) and (c) of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001, Ch. 1, App. 1–A.[7] We entered an order on April 3, 2006, directing the attorney to show cause why such an interim suspension should not be entered. On the same day, respondent was discharged from Valley Hope after completing an in-patient treatment program. On April 12, 2006, the attorney filed a response to our order, agreeing to an immediate interim suspension until he could demonstrate his fitness to resume the practice of law. On April 24, 2006, we determined that respondent was incapable of practicing law and suspended him from the practice of law.

¶ 5 On May 23, 2006, the trial panel held a closed evidentiary hearing in which the parties offered joint exhibits, stipulated to the complaint, and presented the testimony of witnesses and arguments before the tribunal. On May 26, 2006, the parties jointly moved and were allowed to supplement the record with additional exhibits. On July 7, 2006, the attorney and the Bar Association, conceding confusion as to the proper procedures to follow, moved to supplement the record and filed a petition for rehearing, which was in actuality a petition for reinstatement. The confusion arose concerning whether the attorney needed to seek a separate reinstatement because he had been suspended, or whether the disciplinary hearing was sufficient to include a request for reinstatement. The trial panel determined on May 23, 2006, that a sufficient record was made to determine both reinstatement as well as discipline.

■ ¶ 6 The trial panel filed its report on August 4, 2006, recommending reinstatement from the interim suspension and a one year suspension for the attorney's misconduct with supervision or probation for three years with stipulations.[8] The trial panel also recommended that respondent pay the costs of the proceeding and any costs associated with the terms of his probation. On December

---

6. Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, see note 3, supra.

of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendations as to whether the costs of the investigation, record and proceedings should be imposed on the respondent) . . .
Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A provides in pertinent part:
The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefore has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown . . .

7. Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, see note 2, supra.

8. The stipulations were that the attorney: 1) maintain sobriety, and refrain from abusing prescribed medications or using any prescription medications without a doctor's written authorization; 2) submit to and pass random drug testing; 3) abide by his Lawyers Helping Lawyer's Contract and have his mentor, his alcoholic anonymous sponsor and counselor, submit monthly progress reports of his continued care and treatment; 4) attend alcoholic anonymous meetings; 5) follow the Bar Association's recommendations regarding his law office practice and

12, 2006, we remanded the matter to the trial panel for another hearing on reinstatement because the attorney failed to meet the burden of proof necessary for reinstatement.[9]

¶ 7 A hearing was held before the trial panel on January 23, 2007, and the trial panel issued its report on March 9, 2007. The trial panel recommended reinstatement, placement under supervision or probation with stipulations for three years, and discipline and costs be imposed. The briefing cycle was complete on March 29, 2007, when the parties filed a joint brief in support of reinstatement and a waiver of further briefs.

## I.

### ¶ 8 THE ATTORNEY MET THE BURDEN OF PROOF NECESSARY FOR REINSTATEMENT.

¶ 9 The genesis of this cause is Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App–1, which concerns suspension of a lawyer from the practice of law due to personal incapacity. Personal incapacity includes mental or physical illness, active misfeasance, or repeated neglect or habitual use of alcohol, drugs, or other mentally or physically disabling substances.[10] Respondent's incapacity and his threat of substantial and irreparable public harm became

obvious, and the Bar Association properly sought an immediate interim suspension of the attorney's license to practice law.[11] Respondent agreed to the interim suspension and admitted that he was incapable of practicing law.[12] We agreed and suspended respondent on April 24, 2006, until further order of the Court.

¶ 10 Once the Court issues an interim suspension, the next questions in the proceedings become: 1) whether the attorney can make an adequate showing that the incapacity is removed—i.e., that the attorney now has the personal capacity to resume the practice of law; and 2) what amount of discipline, if any, is due for the attorney's misconduct toward clients. The Bar Association and the attorney argue that he has demonstrated proof that: 1) the attorney is no longer threatened by a personal incapacity; 2) the attorney's conduct will conform to the high standards required of a member of the bar; and 3) the attorney has demonstrated that he satisfies the other pertinent criteria for reinstatement.

¶ 11 The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the in-

---

management; 6) enroll and attend counseling, treatment courses, or facilities as may be recommended; 7) diligently, competently, timely and professionally handle his clients' cases and earn any fee for which he is paid in advance; and 8) comply with all of the terms and conditions of probation or face immediate suspension or discipline.

9. We determined that respondent was entitled to a full and fair opportunity to present adequate evidence showing that the incapacity is removed. *See, State ex rel. Oklahoma Bar Ass'n v. Minter,* 2001 OK 69, ¶ 23, fn. 49, 37 P.3d 763; *State ex rel. Oklahoma Bar Ass'n v. Lobaugh,* 1988 OK 144, ¶ 15, 781 P.2d 806. Due process in disciplinary hearings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, information concerning the claims of the opposing party, reasonable opportunity to be heard, and the right to confront the unfavorable witnesses.

10. Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App.–1, see note 2, supra.

11. Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, see note 3, supra, allows the Bar Association to seek interim suspension when a lawyer is personally incapable of practicing law as defined by Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App.–1, see note 2, supra.

12. Rule 6.2A (2), Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides in pertinent part:

(a) Upon filing of the verified complaint, the Court may issue any order directing the respondent to object and show cause within (10) days why such order of interim suspension should not be entered.
(b) In the event such an objection is timely filed, the matter shall be set for hearing at the earliest possible time. Such hearing may be before the Court, any Justice thereof, or the Court may refer the matter to the Professional Responsibility Tribunal for hearing and recommendation.

terest of the public, of the courts, and of the legal profession.[13] The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners is solely vested in this Court.[14]

¶ 12 In a Rule 10 proceeding the main objective is to minimize the potential risk to the public of harm from a practitioner's incapacity. The focus is not exclusively on the past; rather the focus is on the practitioner's present condition and its future consequences.[15] A disability does not shield a practitioner from professional responsibility. Where the facts so warrant, discipline could be imposed even when the attorney is also found to be personally incapable of practicing law.[16] However, the disability may serve as a mitigating factor when searching for suitable discipline.[17] For instance, alcohol abuse or alcoholism may serve as a mitigating factor where the offending attorney recognizes the problem and seeks and cooperates in treatment,[18] as the attorney did in this case.

¶ 13 Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A,

directs that the procedures, insofar as they are applicable, for resuming the practice of law after the removal of a personal incapacity are the same as the procedures as those provided in Rule 11,[19] following suspension upon disciplinary grounds.[20] It makes no difference whether the suspension resulted from an interim suspension for personal incapacity[21] or from a suspension pursuant to a Rule 10 proceeding where no interim suspension was sought.[22] In requesting reinstatement, the lawyer must establish by clear and convincing evidence that: 1) the condition is no longer a threat rendering the applicant personally incapable of practicing law; and 2) the applicant's conduct will conform to the high standards required of a member of the Oklahoma Bar. Further, the applicant must present stronger proof of qualifications than one seeking admission for the first time.[23]

¶ 14 We look at several criteria for reinstatement when a lawyer has been either disbarred or has resigned pending disciplinary proceedings while holding to our primary duty of safeguarding the public, the courts,

13. *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 1995 OK 98, ¶ 15, 904 P.2d 597; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 14, 848 P.2d 543; *State ex rel. Oklahoma Bar Ass'n v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920; *State ex rel. Oklahoma Bar Ass'n v. Moss*, 1983 OK 104, ¶ 12, 682 P.2d 205.

14. *State ex rel. Oklahoma Bar Ass'n v. Holden*, 1995 OK 25, ¶ 1, 895 P.2d 707; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 8, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶ 4, 624 P.2d 1049.

15. *State ex rel. Oklahoma Bar Ass'n v. Adams*, 1995 OK 17, ¶ 13, 895 P.2d 701.

16. *State ex rel. Oklahoma Bar Ass'n v. Prather*, 1996 OK 87, ¶ 17, 925 P.2d 28; *State ex rel. Oklahoma Bar Ass'n v. Adams*, 1995 OK 17, ¶ 13, 895 P.2d 701; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, see note 13, supra at ¶ 15; *Oklahoma Bar Ass'n v. Fore*, 1977 OK 41, ¶ 9, 562 P.2d 511.

17. *State ex rel. Oklahoma Bar Ass'n v. Caldwell*, 1994 OK 57, ¶ 7, fn. 12, 880 P.2d 349.

18. *State ex rel. Oklahoma Bar Ass'n v. Doris*, 1999 OK 94, ¶ 39, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 1993 OK 86, ¶ 17, 863 P.2d 1123; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, see note 13, supra at ¶ 16.

19. Rule 11 *et seq.*, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, governs the reinstatement process.

20. Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides in pertinent part:

    (a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following the suspension following disciplinary grounds. . . .

21. Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, see note 3, supra.

22. Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A.

23. Rule 11.4 Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides:

    An application for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceed-

and the legal profession.[24] The factors include: present moral fitness; consciousness of the wrongfulness and disrepute brought on the profession; extent of rehabilitation; seriousness of the original misconduct; conduct subsequent to discipline; time elapsed since the original discipline; petitioner's character, maturity, and experience; and present competence in legal skills.[25] While all the factors are relevant when the suspension results from an incapacity to practice law, those weighing most heavily to the incapacity are: 1) the extent of rehabilitation of the affliction attributable to the incapacity; 2) the conduct subsequent to the suspension and treatment received for the condition; and 3) the time which has elapsed since the suspension.

¶ 15 To be reinstated, the attorney must make a showing that, over a significant amount of time, he has maintained sobriety and refrained from abusing drugs or alcohol; passed random drug tests; attended Alcoholics Anonymous meetings; sought necessary counseling and participated in Lawyers Helping Lawyers; has diligently pursued his sobriety; and has met the other factors necessary for reinstatement.

¶ 16 At the second reinstatement hearing, respondent demonstrated every factor which we consider for reinstatement due to a personal incapacity: present moral fitness; consciousness of the wrongfulness and disrepute brought on the profession; extent of rehabilitation; seriousness of the original misconduct; conduct subsequent to discipline; time elapsed since the original discipline; petitioner's character, maturity, and experience; and present competence in legal skills.

¶ 17 Eleven witnesses who ranged from three district court judges, the director and a mentor from Lawyers Helping Lawyers, respondent's family, and the Oklahoma County Public Defender, all with personal firsthand knowledge of respondent's recovery testified as to all of these factors. Other affidavits and numerous exhibits were submitted to support respondent's reinstatement. Respondent has continually passed monthly random drug tests and over a year has elapsed since he first began treatment. It was undisputed that respondent, prior to his affliction, was an excellent attorney and asset to the Bar. We applaud respondent for his efforts to seek treatment, get sober, remain clean, and overcome his problems of drug and alcohol abuse.

¶ 18 Upon de novo review, we find that clear and convincing evidence shows that: 1) respondent is no longer under an incapacity which would preclude him from practicing law; and 2) respondent's conduct will conform to the high standards required of a member of the Oklahoma Bar. We find it unnecessary to impose additional stipulations to the reinstatement because if respondent were to relapse and become incapacitated again, he would be subject to suspension. While the steps recommended by the trial panel are laudable, we are not making them a condition of reinstatement.

## II.

¶ 19 **THE ATTORNEY'S MISCONDUCT WARRANTS DISCIPLINE OF A RETROACTIVE SUSPENSION FROM THE PRACTICE OF LAW FROM MARCH 9, 2006, UNTIL THE DAY THIS OPINION IS ISSUED.**

¶ 20 In total, respondent's clients, or someone on their behalf, filed eleven griev-

ings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

**24.** *In the Matter of Reinstatement of Fraley*, 2005 OK 39, ¶ 35, 115 P.3d 842; *In the Matter of Reinstatement of Pierce*, 1996 OK 65, ¶ 16, 919 P.2d 422; *In the Matter of Reinstatement of Cantrell*, 1989 OK 165, ¶ 2, 785 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 15, 642 P.2d 262.

**25.** *In the Matter of Reinstatement of Rhoads*, 2005 OK 53, ¶ 3, 116 P.3d 187; *In the Matter of Reinstatement of Gassaway*, 2002 OK 48, ¶ 3, 48 P.3d 805; *In the Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 20, 752 P.2d 1125.

ances against him which culminated in allegations of ten counts of misconduct. The grievances stemmed from clients who hired respondent to represent them in criminal proceedings and involved ineffective or no communication with clients; neglecting cases; neglecting to show up in court on behalf of the client; mishandling the case or incompetent representation; and failure to perform work for which he had been hired.[26] The General Counsel also filed a grievance stemming from numerous allegations ranging from failure to appear in court for trials and other proceedings on behalf of clients to demonstrations of disrespectful behavior toward the bench and direct contempt of court.

¶ 21 The attorney admitted to all of the allegations of misconduct. The Bar Association and the attorney note that during his interim suspension, the attorney has complied with the terms and conditions of the probation as originally recommended by the trial panel. The record reflects that the attorney was cooperative with the Bar Association in seeing that all of the cases in which he neglected were assigned to other lawyers who handled them as efficiently as possible and have in fact resolved the matters without further complaint. The Bar Association and the attorney ask that based upon his interim suspension for over one year, and the overwhelming mitigation presented, the Court issue a private reprimand with a probationary term and an assessment of costs.

¶ 22 Again, our research does not reflect any precedent for such a recommendation particularly when one considers the detriment to the clients, the seriousness of the conduct, the extent of addiction, and the length of time in which the attorney sought help in controlling the addiction.[27] We real-

26. On April 29, 2005, Emily Waxler, on behalf of Aaron Baker, complained that respondent refused to communicate with Baker and failed to appear on Baker's behalf in Baker's felony case. On July 26, 2005, Lacretia Jemison, respondent's client in a felony drug case, insisted that respondent had failed to communicate with her. On September 28, 2005, Delbert Johnson alleged that respondent: 1) neglected his case and refused to communicate with him; 2) lied about discussing the case with him; 3) acted jointly with the state to keep him detained; and 4) refused to meet with witnesses. On November 8, 2005, Delinda Long filed a grievance on behalf of Ronnie Hightower alleging that respondent had neglected Hightower's drug trafficking case and failed to communicate with him. On December 6, 2005, the Bar Association received a grievance from the step-mother of respondent's client, Jarvis Scroggins, insisting that respondent: 1) refused to communicate; 2) failed to appear in court on Scroggins' behalf; 3) mishandled the case; and 4) retained a fee for which he did not earn. On January 17, 2006, Betty Byrd filed a complaint on her son's behalf, Shawn Byrd, insisting that respondent failed to appear in court three times on her son's murder trial and that he did not communicate with them. On February 9, 2006, Shawn Byrd filed a grievance alleging that the attorney had failed to make court appearances, and neglected his case. On January 17, 2006, Jeannie Askins filed a grievance alleging neglectful and incompetent representation of her in her criminal case as well as her son's criminal case. Shay Marks filed a grievance on February 7, 2006, indicating respondent's neglect, incompetence, and failure to communicate with her. On March 15, 2006, Charles Edward Jones filed a complaint insisting that respondent neglected his case, failed to communicate, and failed to appear in court in numerous occasions including his trial. Finally, on March 21, 2006, Carolyn Goodman, on behalf of her son, filed a grievance contending that respondent had ceased communication with either herself or her son, failed to perform work which he had been hired, and failed to appear in court.

27. In some cases, a practitioner incapable of practicing law and engaged in neglectful conduct similar to respondent was suspended for two years and a day. For example, in *State ex rel. Oklahoma Bar Association v. Adams*, 1995 OK 17, ¶ 25, 895 P.2d 701, a practitioner whom the Court found incapable of practicing law under Rule 10 due to alcoholism was suspended for two years and a day for conduct charged in five grievances such as failure to prosecute a cross-petition, file response to summary judgment, and keep clients informed of case. Practitioner failed to appear in court, file timely pleadings and to show up prepared and with proper regard for personal appearance and hygiene.

Some cases involve suspension under Rule 10 which was later reinstated. *In the Matter of Reinstatement of Rhoads*, 2005 OK 53, 116 P.3d 187 (Attorney who was suspended from the practice of law under Rule 10 in 1999 for mental illness was denied reinstatement in 2000 when his doctor testified that he was fit to practice law if he stayed on medication, continued to monitor blood levels and attended therapy. However, he was eventually reinstated in 2005 when he was able to prove by clear and convincing evidence that reinstatement was warranted.).

In other discipline or reinstatement cases Rule 10 was not involved, but drug or alcohol abuse was a part of the practitioner's lifestyle. *In the Matter of Reinstatement of Kenneth Van Todd*, SCBD No. 5130 (The Court denied reinstatement

Note 25—Continued

to an attorney who pled guilty to six felonies stemming from a drug addiction and the explosion of his meth lab even though he had successfully completed 7½ years of probation.); *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, ¶ 49, 142 P.3d 410 (Alcoholic practitioner with 6 grievances involving failure to perform legal services, failure to communicate with clients and failure to refund unearned fees was suspended for two years and a day.); *State ex rel. Oklahoma Bar Ass'n v. Rogers*, 2006 OK 54, ¶ 22, 142 P.3d 428 (The Court recently suspended a practitioner for two years and a day for professional misconduct arising out of numerous alcohol-related felony and misdemeanor convictions.); *In the Matter of Reinstatement of Tully*, 2004 OK 44, ¶ 11, 92 P.3d 693 (Attorney who was suspended in 2001 for two years and a day for misappropriating funds and pled no contest for felonious possession with intent to distribute a controlled dangerous substance and the possession of a firearm during a felony was reinstated in 2004 after the attorney demonstrated that he had reformed his lifestyle and had demonstrated a commitment to programs to assist him in overcoming his previous drug addition.); *State ex rel. Oklahoma Bar Ass'n v. Giger*, 2001 OK 96, ¶ 25, 37 P.3d 856 (Practitioner had six arrests for drug related vehicular crimes and failure to competently, diligently represent clients, and failure to respond to disciplinary inquiries.); *State ex rel. Oklahoma Bar Association, v. Tully*, 2000 OK 93, ¶ 24, 20 P.3d 813 (Practitioner who admitted use of methamphetamine and who misappropriated funds, and had felony and misdemeanor convictions was suspended for two years and a day.); *In the Matter of Reinstatement of Dennison*, 1996 OK 24, ¶ 16, 913 P.2d 1315 (Attorney suspended in 1992 after pleading *nolo contendere* to two counts of making a false statement to a federally insured financial institution reinstated in 1996 after showing sobriety, regular attendance of alcoholics anonymous, working with Lawyers Helping Lawyers.); *In the Matter of Reinstatement of Pierce*, 1996 OK 65, ¶ 17, 919 P.2d 422 (Criminal defense attorney who resigned in 1989 with four counts of professional misconduct against him and an arrest and charges resulting from thirteen drug-related counts was denied reinstatement in 1996 because he couldn't prove rehabilitation, good moral character, and that he timely notified clients that he could not represent them.); *State ex rel. Oklahoma Bar Ass'n v. Briery*, 1996 OK 46, ¶ 15, 914 P.2d 1046 (Practitioner suspended two years and a day for failing to appear in court, failing to notify clients, and improper use of funds, and writing insufficient checks. By the time discipline was imposed, the practitioner had undergone treatment and had remained sober for a substantial period of time.); *In the Matter of Reinstatement of Wright*, 1995 OK 128, ¶ 22, 907 P.2d 1060 (Practitioner reinstated in 1995 after suspension upon felony conviction for distributing cocaine in 1988 because he was not a trafficker or dealer, and no evidence that his use of illegal substances affected his representa-

tion of clients. He also underwent regular drug testing for 68 months from 1987 to 1992 with no positive results for any illegal drugs.); *State ex rel. Oklahoma Bar Ass'n v. Willis*, 1993 OK 138, ¶ 16, 863 P.2d 1211 (Practitioner convicted of obtaining controlled substance by misrepresentation warranted suspension for 15 months.); *State ex rel. Oklahoma Bar Ass'n v. Wright*, 1990 OK 45, ¶ 2, 792 P.2d 1171 (Attorney who pled guilty to one count of distributing cocaine to friends in a social setting was suspended from the practice of law for two years and one day.); *State ex rel. Oklahoma Bar Ass'n v. Hall*, 1989 OK 119, ¶ 37, 781 P.2d 821 (One year suspension for neglect of legal matter and making false statements for attorney who treated depression with alcohol but stopped drinking for eighteen months.); *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 1989 OK 123, ¶ 13, 781 P.2d 824 (Nine month suspension for attorney convicted for possession of marijuana.); *In the Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 24, 752 P.2d 1125 (Alcoholic attorney who resigned in 1982 pending six formal grievances relating to commingling funds was denied reinstatement in 1998 despite his recovery for failure to meet burden of proof in part because he failed to accept the blame for his actions and his alcoholism and failed to make restitution.); *State ex rel. Oklahoma Bar Ass'n v. Ingmire*, 56 O.B.J.2082 (1985) (Practitioner who was convicted of a misdemeanor for simple possession of cocaine was suspended for three years.).

In *State ex rel. Oklahoma Bar Ass'n v. Armstrong*, 1992 OK 79, ¶ 1, 848 P.2d 538, we declined to impose discipline for a practitioner who was convicted of a second offense of driving under the influence because, following the incident, he had not taken a drink in over six years, had undergone extensive rehabilitation, and had been a model of rehabilitation to others.

In some cases, where the client neglect was either minimal or non-existent or the attorney failed to cooperate with the disciplinary proceedings the Court has issued discipline for less than six months or public censures. *State ex rel. Oklahoma Bar Ass'n v. Burns*, 2006 OK 75, ¶ 35, 145 P.3d 1088 (Six month suspension for driving while intoxicated or under influence of alcohol.); *State ex rel. Oklahoma Bar Ass'n v. Aston*, 2003 OK 101, ¶ 21, 81 P.3d 676 (Six month suspension for possession of marijuana.); *State ex rel. Oklahoma Bar Ass'n v. Hogue*, 1995 OK 64, ¶ 2, 898 P.2d 153 (Six month suspension for false statement after denying use of drugs and failing drug test and pleading guilty to driving under influence and transporting open container.); *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 1993 OK 86, ¶ 19, 863 P.2d 1123 (Six month suspension for attorney with alcohol problems with counts of lending money to clients and commingling funds, failure to keep proper records and failure to deliver funds promptly.); *State ex rel. Oklahoma Bar Ass'n v. Perkins*, 1992 OK 7, ¶ 9, 827 P.2d 168 (Six month suspension for attorney who had been attending treatment for substance abuse for 5 years and who failed to return calls and failed to file estate tax return while handling

ize of course, as the Bar Association points out, that respondent was not convicted of any crimes and the caselaw often involves attorneys who faced criminal convictions. Nevertheless, the attorney has admitted to criminal conduct which could have resulted in a conviction had the matter been pursued.

¶ 23 However, because of mitigating circumstances of respondent's addictions and his cooperation in getting his former clients the help they needed to resolve their cases as well as his conduct since his rehabilitation treatment, we hold that the attorney's misconduct warrants discipline of a retroactive suspension from the practice of law from the date he self-suspended (March 9, 2006) until the day this opinion is issued.

### III.

¶ 24 **COSTS ARE ASSESSED IN THE AMOUNT OF $912.00 TO BE PAID N THREE MONTHLY INSTALLMENTS BEGINNING 90 DAYS AFTER THIS OPINION IS ISSUED.**

¶ 25 On March 29, 2007, the Bar Association filed an application to assess costs, arguing that pursuant to Rule 11.1 of the Rules

Governing Disciplinary Proceedings, 5 O.S. 2001 Ch. 1, App. 1–A,[28] it was entitled to be reimbursed for the expenses incurred in investigating and processing the application for reinstatement. The Bar Association seeks reimbursement of $1,824.00 in expenditures relating to the January 23, 2007, reinstatement proceeding. Additionally, on September 7, 2006, the Bar Association, pursuant to Rules 6.13 and 6.16 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A,[29] sought an assessment of costs in the amount of $1,354.83 as a result of the reinstatement/disciplinary proceedings of May 23, 2006, but we deferred the matter until the issue of reinstatement was concluded. The costs total $3,178.83.

¶ 26 We agree that costs may be imposed in Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, disciplinary matters when good cause is shown.[30] When a lawyer seeks reinstatement after a suspension under incapacity proceedings of Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, the reinstatement procedures of Rule 11 are followed only to the extent applicable.[31] Rule

Note 25—Continued
probate.); *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 1993 OK 144, ¶ 15, 864 P.2d 339 (90 day suspension for alcoholic attorney who neglected case and misrepresented facts of grievance.); *State ex rel. Oklahoma Bar Ass'n v. Arnett*, 1991 OK 44, ¶ 10, 815 P.2d 170 (90 day suspension for attorney charged with possession of controlled substance.); *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶ 30, 127 P.3d 600 (Public censure for alcoholic attorney who was arrested for sexual battery.); *State ex rel. Oklahoma Bar Ass'n v. Farber*, 1993 OK 129, ¶ 1, 863 P.2d 1175 (Public censure for alcoholic who failed to promptly deliver funds, represent diligently, and keep client informed.); *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 22, 848 P.2d 543 (Public censure for alcoholic who lacked diligence, promptness and did not keep client informed.); *State ex rel. Oklahoma Bar Ass'n v. Blackburn*, 1991 OK 35, ¶ 9, 812 P.2d 379 (Public censure for failure to file criminal brief and a conflict of interest in a divorce proceeding for attorney under substance abuse.); *State ex rel. Oklahoma Bar Ass'n v. Garvin*, 1989 OK 97, ¶ 19, 777 P.2d 926 (Public censure for alcoholic who failed to file lawsuit and kept retainer, failed to inform client, and failed to respond to investigation.).

28. Rule 11.1 Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides in pertinent part:

> A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures: ...
> (c) The applicant shall pay a fee to cover the expenses of investigating and processing the application as determined by the Professional Responsibility Tribunal. In addition, the applicant shall pay the cost of the original and one copy of the transcript of any hearings held in connection with the application. ...

29. Rule 6.13, Rules Governing Disciplinary Proceedings, see note 5, supra; Rule 6.16, Rules Governing Disciplinary Proceedings, see note 5, supra.

30. *Id.*

31. Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

> (a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following suspension upon

10 includes cost measures which provide that the actual costs of the proceedings for suspension and for reinstatement under Rule 10 shall be assessed unless remitted by the Court for hardship.[32]

¶ 27 Under the facts presented, and because good cause has not been shown, we decline to impose the payment of any costs related to the first reinstatement/disciplinary proceedings of May 23, 2006.[33] When we remanded the matter for a second hearing we recognized that the petition for reinstatement and discipline was premature. Respondent has come to recognize that he was not ready for reinstatement at that time and that had he been reinstated he would have likely relapsed.[34] More importantly,

---

32. disciplinary grounds. The petition shall be filed with the Clerk of the Supreme Court and the petitioner will be required to supply such supporting proof of personal capacity as may be necessary. In addition, the petitioner may be required to submit to examinations by physicians selected by the Professional Responsibility Tribunal. After the matter is submitted to the Professional Responsibility Tribunal, the Trial Panel may require such additional testimony and proof as may be helpful in determining whether the petitioner should be reinstated.
(b) After the hearing has been completed, the record and the report shall be forwarded to the Supreme Court for its consideration as a part of the record in the proceeding.
(c) The actual cost of the proceedings for suspension and for reinstatement shall be assessed against the respondent or petitioner unless remitted by the Supreme Court on the ground of hardship.

**32.** *Id.*

**33.** The appropriateness of assessing costs hinges on whether the professional misconduct charges have been proven by clear and convincing evidence and whether the costs are related to a violation of a rule of professional conduct or disciplinary rule. *State ex rel. Okla. Bar Ass'n v. Israel*, 2001 OK 42, ¶ 32, 25 P.3d 909; *State ex rel. State Bar Ass'n v. Scroggs*, 2003 OK 21, ¶ 66, 70 P.3d 821. If the Bar fails to prove allegations by clear and convincing evidence, costs should not be assessed. *State ex rel. Okla. Bar Ass'n v. Armstrong*, 1992 OK 79, ¶ 7, 848 P.2d 538. See, *State ex rel. Okla. Bar Ass'n v. Watson*, 1989 OK 72, 773 P.2d 749 (Application for costs denied when complaint dismissed.). In *State ex rel. Oklahoma Bar Ass'n v. Israel*, 2001 OK 42, 25 P.3d 909, we held that the fact that the respondent prevailed on two of the three counts in a disciplinary case constituted good cause and proportionately reduced the costs sought by two-thirds. Additionally, in *State ex rel. Oklahoma Bar Ass'n v. Dobbs*, 2004 OK 46, 94 P.3d 31, we proportionately reduced the respondent's costs because he had been exonerated in five of the fifteen counts. Also, in *State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, 114 P.3d 427, we reduced the costs assessed to one-third when the respondent prevailed on two of the three counts. Here, the entire first proceeding was prematurely prosecuted by the Bar. This constitutes good cause and the respondent should not be charged with any of these costs.

**34.** The trial transcript of January 23, 2007, provides in pertinent part at pp. 257–58:
... Q And are you familiar with the part in that opinion that indicated, back when we were here in May, May 23rd, seeking your reinstatement, that that was too quick after all this stuff had happened, for reinstatement to, at that time—to, at that time, to be a feasible thing?
A Yes.
Q Do you agree with that assessment?
A Yes.
Q Can you tell the Panel why you agree with it?
A I don't know who said it today. I think it was Loraine, that things have always come easy to me and I believe that when I got out of rehab and I made a semi agreement with the Bar that I would come back like June as long as I did everything I was supposed to do, I thought that was given, that I was going to come back in June....I know now that it's a privilege to practice law and that you have to earn that and keep that, and I think that if I had just gotten out of rehab 45 days out, I think it was, and been let to go right back to work, I still had the same office, that people that I drank with that you were asking about, they were still there. I don't know what would have happened.
So it's been a blessing—it's been hard and I'm not going to sugarcoat it. I mean, it has been hard. I have had to, you know, work as a law clerk and do things that I didn't have to do before, but I've done them to keep afloat until I can get a decision here, but it has been a blessing to be able to stay at home because me and my kids are closer than we've ever been. Me and my wife are better than we've ever been. I'm healthier than I've ever been and I wish that they would have seen me in March. I know you saw me in May, but I had been to rehab. I was skinny and I was worn out from drinking and everything else I was doing. I've gotten healthy again. I'm probably healthier now than I've ever been and it has been a blessing to me to have ten months to do all that, so I agree with Mr. Karim and the Supreme Court, that I wasn't—it probably would not have been right to start back June 1st like the original plan and I'm glad now that I didn't ...

the Bar Association now concedes, at a time when it was exercising its prosecutorial power and had joined with the attorney in seeking reinstatement, it, too, was premature in bringing the matter before the trial panel.[35] Nor do we find it necessary to impose the full amount of the costs assessed in the second reinstatement proceeding because the record reflects that the attorney has made a showing of hardship. Consequently, the attorney is responsible for partial payment of costs in the amount of $912.00 to be paid in three monthly installments beginning 90 days after this opinion is issued.[36]

## CONCLUSION

¶ 28 The petition for reinstatement of John Barry Albert is granted and the attorney is disciplined by a retroactively suspended from March 9, 2006, until the date this opinion is issued. The attorney is responsible for the payment of costs in the amount of $912.00 to be paid in three monthly installments beginning 90 days after this opinion is issued.

¶ 29 Rule 10 proceedings are ordinarily kept confidential and do not become a matter of public record except where disciplinary proceedings are involved (Rule 6) or otherwise provided by the Court.[37] It is for this Court to determine what course to take in this matter. Rule 10 proceedings and their subsequent suspensions are confidential out of respect and as a courtesy to the attorney who is incapacitated. It must then be decided at what point the public should be made aware of such incapacity.[38] The attorney testified at trial that he was not opposed to publication,[39] and we agree that this matter should be published. Consequently, we suspend confidentiality at this time.

Respondent later explained that he did not have an "agreement" with the Bar Association, but that he was merely advised that if he did what he was supposed to do, got favorable reports from counselors and from Lawyers Helping Lawyers' mentors and passed random drug tests, the Bar's recommendation would be favorable.

**35.** The prosecuting attorney explains the prematurity of the proceeding in the trial transcript of January 23, 2007, provides in pertinent part at pp. 324:

> ... I may, as an officer of the court, state very bluntly, that I may have had blinders on because I was seeing Mr. Respondent every day. I was working with clients every day. I was talking to the judges every day. I had 200 clients telling me I want my attorney, when is he coming back to court? I don't want anybody else. I don't care if he's going to do it for free. I want my attorney. I like Johnny Albert. I trust him. I don't know this person.
>
> I had judges going when are you going to get him back in my courtroom? I need Johnny Albert back here. He clears more cases faster than anybody else. I want him back on my docket.
>
> That may have influenced the rush to the hearing, but certainly, that was an error on my judgment as a prosecutor for the Bar and it was not his place to say that I could have moved for a continuance and stated that it was too soon and so I apologize to the Tribunal members for wasting your time in May and to Mr. Albert, because that was obviously very frustrating to him and his family and all the people who cared enough last time to come out and testify....

**36.** Costs, if appropriate, should be assessed according to the following factors: 1) the amount assessed should be consistent with those imposed on other practitioners for similar acts of professional misconduct; 2) the attorney's previous record of professional behavior should be considered; and 3) the assessment should best serve the public and the integrity of the bar. See, *State ex rel. Okla. Bar Ass'n v. Schraeder*, 2002 OK 51, ¶ 32, 51 P.3d 570; *State ex rel. Okla. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 9, 914 P.2d 644; *State ex rel. Okla. Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 16, 880 P.2d 339; *State ex rel. Okla. Bar Ass'n v. Holden*, 1995 OK 25, ¶ 12, 895 P.2d 707.

**37.** Rule 10.12 Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, provides:

> Except where disciplinary proceedings are involved (Rule 10.4), all proceedings under this Rule 10 shall remain confidential and shall not be a matter of public record, unless otherwise ordered by the Supreme Court. A separate, non-public docket and files shall be maintained for this purpose, under the supervision of the Chief Justice.

**38.** *State ex rel. Oklahoma Bar Ass'n v. Adams*, see note 27, supra at ¶ 12.

**39.** The trial transcript of January 23, 2007, provides in pertinent part at pp. 279–80:

> ... A This is a Rule 10 proceeding. I would not care if it wasn't and it was published and I don't—if people don't know what I've done and what I've been through, I'll tell them. And I do plan on, if I'm allowed to, to start being a mentor when I get more years into this, for someone else.
>
> I'm going to wear this as a—as a lesson in life that I caused, but I'm not going to be ashamed of it to the point that I won't talk about it. I wouldn't care if this was public. If people don't know my situation, I'll tell it to

REINSTATEMENT GRANTED; DISCIPLINE IMPOSED AND RESPONDENT SUSPENDED; COSTS ASSESSED.

EDMONDSON, V.C.J., LAVENDER, KAUGER, WATT, COLBERT, JJ., concur.

WINCHESTER, C.J., concurs in result.

HARGRAVE, J., dissents.

TAYLOR, J, with whom OPALA, J., joins, dissenting:

I would follow the recommendations of the Professional Responsibility Tribunal and impose a one-year suspension that is deferred for three years conditioned upon the Respondent being on supervised probation and subject to the ten strict requirements of probation contained in the Trial Panel Report.

them and I want to try to be a good—good          example. . . .