2011 OK 79

**In the Matter of the REINSTATEMENT OF John M. WHITWORTH, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 5667.**

Supreme Court of Oklahoma.

Sept. 20, 2011.

Jeffrey B. Kent, Bartlesville, Oklahoma, for Petitioner.

Ted Rossier, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

## OPINION

WATT, Justice:

### PROCEDURAL HISTORY

¶1 On March 11, 2008,[1] this Court suspended Petitioner John Matthew Whitworth (Whitworth or Petitioner) from the practice of law for two years following disciplinary proceedings brought by the Oklahoma Bar Association (the Bar) pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A.[2] The suspension began to run on June 26, 2006, the effective date of Petitioner's previous suspension for noncompliance with mandatory continuing legal education ("CLE") requirements. We found nothing in the record in our review of the underlying disciplinary case to indicate whether the Bar's General Counsel had considered a suspension under Rule 10, RGDP,[3] based on Petitioner's drug addiction, despite the Bar's knowledge of it. Nevertheless, this Court found Petitioner was personally incapable of practicing law due to his admitted addiction to methamphetamine and suspended him also under Rule

1. See case number SCBD 4900, *State of Oklahoma ex rel. Oklahoma Bar Association v. Whitworth*, 2008 OK 22, 183 P.3d 984.

2. In the underlying disciplinary proceeding, this Court found evidence supporting multiple violations by Petitioner of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2001, Ch. 1, App. 3–A, specifically, Rules 1.1, 1.3, 1.4, and 8.1(b), and RGDP 1.3 and 5.2; and one violation of RGDP 8.4(d).

3. Rule 10.1, RGDP, provides for suspension of lawyers who are found to be "personally incapable of practicing law," which includes, *inter alia*, the "[h]abitual use of alcoholic beverages or liquids of any alcoholic content, ... drugs, or any other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law." Rule 10.1(c), RGDP.

4. In Petitioner's underlying disciplinary case, we noted similarities to another case involving drug and alcohol addiction, *State ex rel. Oklahoma Bar*

10.[4] We ordered that "[u]pon regaining sobriety and upon the expiration of his Rule 6 suspension period [two years from June 26, 2006], Respondent may seek reinstatement by demonstrating his sobriety and by meeting all the requirements for Rule 11[5] reinstatement." *Whitworth*, 2008 OK 22, ¶4, 183 P.3d at 988.

### PETITIONER COMPLIED WITH RULE 11, RGDP

¶2 Whitworth's petition for reinstatement, the subject of this proceeding, was filed on September 3, 2010. It contained his affidavit showing his activities and his places of residence since the date of his suspension on June 26, 2006. He swore to his abstention from drug or alcohol use, his regular attendance at AA meetings, his steady employment at Lowe's as his only means of income since his suspension, his award of sole, exclusive custody of his daughter and his current MCLE status. He also furnished his affidavit stating he has not been engaged in the practice of law in any county in any state since June 26, 2006, as well as the affidavits from the court clerks of Sequoyah, Washington and Cherokee Counties, stating that Respondent has not engaged in the practice of

*Association v. Albert*, 2007 OK 31, 163 P.3d 527. We declared the need for consistency within the disciplinary process when habitual substance abuse is involved and explained the distinction between Rule 6 and Rule 10 proceedings:

The purposes of both Rule 10 and Rule 6 are to protect the public and to maintain the integrity of the legal system. While Rule 6 furthers those purposes through **censure, suspension, and disbarment,** Rule 10 does so by fostering **lawyer sobriety.** [emphasis added].
*Whitworth*, 2008 OK 22, ¶44, 183 P.3d at 994. Rule 10 proceedings must be based on the impairment of the lawyer, not the lawyer's status in the legal community. 2008 OK 22, ¶43, 183 P.3d at 994.

5. See also Rule 10.11, RGDP, which provides for reinstatement after a Rule 10 suspension. It provides, in part:

(a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, **the same as the procedures for reinstatement provided in Rule 11 following suspension upon disciplinary grounds** .... [emphasis added.]

law in their respective counties.[6]

¶ 3 Petitioner provided a copy of a cashier's check in the amount of $1,241.18, payable to the OBA for reimbursement of funds expended on his behalf from the Client's Security Fund of the OBA.[7] He also provided a copy of a cashier's check in the amount of $300, payable to the OBA, representing costs incurred in the previous proceeding and further agreed to pay the costs of investigating and processing his petition for reinstatement and the cost of the original and one copy of the hearing transcript.[8]

¶ 4 Petitioner's affidavit provides that he resided in Tahlequah, Oklahoma, from June 26, 2006 until April, 2007, and in Bartlesville, Oklahoma, since April 1, 2007. He has not resided outside Oklahoma since his suspension.[9]

¶ 5 Whitworth's petition for reinstatement was filed more than two years after his Rule 6 suspension, and the evidence presented "demonstrating his sobriety" indicates he has been sober and drug-free for three years as of January 31, 2011. Thus, his petition, filed on September 3, 2010, was filed within the time contemplated and under the conditions required, as ordered by this Court in his disciplinary hearing.[10]

¶ 6 In this reinstatement proceeding, Petitioner contends he is sober and drug-free and wishes to return to the practice of law. The Bar conducted an investigation,[11] and on December 2, 2010, a hearing was held before a panel of the Professional Responsibility Tribunal (PRT).[12] Sworn testimony was heard from Petitioner and several witnesses who appeared on his behalf. In its Trial Panel Report filed on January 7, 2011, the PRT found by clear and convincing evidence that Petitioner has complied with the requirements of Rule 11 and has met the prerequisites for reinstatement, in compliance with Rule 11.4, RGDP.[13] The PRT recommends approval of his petition for reinstatement.[14]

6. See Rule 11.1(a), RGDP.

7. See Rule 11.1(b), RGDP.

8. See Rule 11.1(c).

9. See Rule 11.1(d).

10. Rule 11.1(e) dictates the length of time a lawyer must wait to seek reinstatement after disbarment or resignation pending investigation or disciplinary proceedings. While the time required in Rule 11.1(e) is not strictly applicable to Petitioner, he was ordered to follow Rule 11 when seeking reinstatement. We find he has followed this Court's direction given in *OBA v. Whitworth*, 183 P.3d at 988, as to when to seek reinstatement because, as found by the PRT, "[h]e has not rushed to be reinstated and has waited for several years until his circumstances, including his state of sobriety, caused him to believe he was ready." Trial Panel Report, page 13. We, therefore, find compliance with Rule 11.1(e).

11. See Rule 11.2, RGDP.

12. See Rule 11.3, RGDP.

13. See Rule 11.4, RGDP. See also Rule 11.5, RGDP, which requires the Trial Panel to file, along with the transcript of the hearing, a report with the Supreme Court, which contains specific findings as to: whether the applicant possesses the good moral character which would entitle him to be admitted to the Bar; whether the applicant has engaged in any unauthorized practice of law while suspended; and whether the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma.

14. In compliance with Rule 11.5, RGDP, the PRT found with regard to the evidence presented:

10. Petitioner possesses the good moral character entitling him to be admitted to the Oklahoma Bar Association. Petitioner has taken responsibility for his actions and faced consequences. He has been since resuming a state of sobriety a responsible parent and responsible financially. Petitioner has actively participated in and employed the tenets of his recovery program and has been open and candid about his alcoholism to those with whom he has business and other dealings. He has not tried to pull the wool over anyone's eyes about being an alcoholic, and appreciates the nature of his disease and the need to be active daily in combating it.

11. Petitioner has not engaged in any unauthorized practice of law during the period of suspension.

12. Petitioner possesses the competence and learning in the law required for admission to practice law in Oklahoma. Petitioner reads the Oklahoma Bar Journal, takes CLE above what would be required of him if he were a member of the OBA, has done research for attorneys.

13. Petitioner is sober and is no longer personally incapacitated as a result of alcohol and drug abuse. Petitioner is honest about the

## JURISDICTION, STANDARD OF REVIEW AND BURDEN OF PROOF

 ¶ 7 This Court has the nondelegable and constitutional duty to regulate the practice of law and the ethics, licensure, and discipline of practitioners of the law. *Matter of Reinstatement of Munson,* 2010 OK 27, 236 P.3d 96. Our review of the record is *de novo,*[15] and we are not bound by the findings of fact of the trial panel, or its view of the evidence or the credibility of witnesses. *Matter of Reinstatement of Mumina,* 2009 OK 76, 225 P.3d 804, 808–809. Pursuant to Rule 11.4, RGDP, an applicant for reinstatement must show affirmatively that, if the suspension from practice is removed, his or her conduct will conform to the high standards required of a member of the Bar.[16] The burden of proof by clear and convincing evidence[17] is on the applicant who will be required to present stronger proof of qualifications than an applicant seeking admission for the first time. The proof presented must be sufficient to overcome this Court's former judgment adverse to the applicant.[18]

 ¶ 8 When ruling on a petition for reinstatement, we consider eight factors. They include: 1) present moral fitness; 2) consciousness of the wrongfulness and disrepute it brought upon the legal profession; 3) the extent of the petitioner's rehabilitation; 4) the seriousness of the original misconduct; 5) conduct after discipline; 6) time elapsed since the original discipline; 7) the petitioner's character, maturity, and experience; and 8) present legal competence.[19] Although each factor is relevant when a suspension is the result of an incapacity to practice law, those weighing most heavily to the incapacity are: 1) the extent of rehabilitation of the affliction attributable to the incapacity; 2) the conduct subsequent to the suspension and the treatment received therefor; and 3) the time which has elapsed since the suspension.[20]

## FACTUAL SUMMARY AND EVIDENCE

¶ 9 Whitworth testified at his reinstatement hearing that he was suspended from the practice of law for his addiction to methamphetamine and alcohol and the consequences which arose from it. His disciplinary hearing was originally set because of other misconduct, the most frequent violation being his failure to respond to the Bar's allegations.[21] However, he stated his addictions to methamphetamine and alcohol were not mentioned in the allegations, and he told the trial

---

state of his sobriety and acknowledges that he must daily combat his disease. He is committed to the AA program to the extent he is a sponsor to others and follows the program with dedication and at a high level of participation. He has placed himself in a position of being accountable to his AA group and a close circle of friends and his family. Plaintiff's drug test results and his physician's statement confirm he is sober and not personally incapacitated.

15. *In re Reinstatement of Otis,* 2007 OK 82, ¶ 7, 175 P.3d 357.

16. Rule 11.4, RGDP, 5 O.S.2001, Ch.1, App. 1–A, provides:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, **the applicant's conduct will conform to the high standards required of a member of the Bar.** The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant

seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. **The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant.** Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules. [emphasis added].

17. Rule 11.4, RGDP; *Matter of Reinstatement of Jones, II,* 2009 OK 1, § 4, 203 P.3d 909.

18. Rule 11.4, RGDP.

19. *Reinstatement of Mumina,* 225 P.3d at 809; *State ex rel. Oklahoma Bar Association v. Albert,* 2007 OK 31, ¶ 14, 163 P.3d 527, 533–534.

20. *Albert,* 163 P.3d at 534.

21. See ORPC 8.1(b); RGDP 5.2.

panel at his disciplinary hearing "that I was a drug addict addicted to methamphetamine and I was an alcoholic." He testified he did not know whether the Bar would have been otherwise aware of these addictions. He said he made it known because it was a fact, and he had an affirmative duty to report it.

¶ 10 Petitioner described how his addiction to alcohol destroyed his professional and family life. It destroyed him "economically, mentally, spiritually and physically as well." He discussed having cirrhosis and hepatitis, being homeless, and going long periods of time without seeing his children. He stated his addictions created quite a "wreckage" in his personal life, involving the things "nearest and dearest" to him. He testified his professional life was even more neglected.

¶ 11 However, he stated he "reached bottom" and cried out for help by calling his mother, who called his ex-wife, who called his father. His ex-wife took him to his father's home. He stayed with his father who nursed him back to health from a liver condition which, based on a series of blood tests, would have soon required him to be hospitalized. He started spending time alone, removed from everything.

¶ 12 He credits this change with starting him down the right path. He admitted to his father and mother that his illness was caused by his methamphetamine addiction. He told his ex-wife who had custody of his two sons, that "I'm the person on the street you point at and tell your kids to stay away from." He stated it was a "real eye opener" for him and occurred a couple of months before his disciplinary hearing.

¶ 13 He also credits "the event of" his disciplinary hearing "[f]or the genesis of my walk through sobriety." He explained he was still very physically ill at the time and was experiencing mental and emotional discomfort, as well. He recalled talking to his older son who rode with him to the hearing. His son asked him if he would get to keep his license. Petitioner answered, " '[i]f there's any justice in the world, son, no. No. We're going to go down and we're going to tell

them the truth . . .' Professionally, I couldn't practice. I said 'I owe an obligation to my profession, to my clients, to the bar association and most importantly to you, your brother and myself, to look the world in the eye and tell them the truth.' " He described that event as the "opening of recovery for me. . . ." He stated he had been so low that complete candor and honesty with the world was palatable to him. As he had heard a friend say frequently at AA meetings, "When the pain of changing or the fear of changing is less than the fear of the pain of staying the same, then people will be open . . . to change." He chose honesty and to look people "in the eye" and tell them what's going on in his world and what type of person he is. He'll accept the consequences, which is the legacy he wants for his children, that "regardless of the mistakes you make, look the rest of the world in the eye and accept your consequences and I'll respect you as a man."

¶ 14 The witnesses who testified on his behalf[22] all stated Petitioner was very candid about his addictions, losing his law practice, and his suspension. He was also very open about his treatment and experience with AA. The AA members who testified also spoke about Petitioner's extra involvement in AA, including sponsoring new members, serving as an officer, and attending "group conscience" meetings after the regular meetings. Joe Halley testified Petitioner shows he wants to effect change in his life and tries to help others at the meetings.

¶ 15 Petitioner testified he did not practice law during his suspension. He said he has been approached by lawyers in Bartlesville about working with them and has done legal research for some of them during his suspension. He adamantly denied doing any legal work in his part-time job for Sharon Leach, a friend who is a real estate agent, or her broker, or otherwise giving legal advice to them. His work involves simple jobs such as locking and unlocking houses or placing signs in the ground. He testified he appeared *pro se* in a legal dispute over custody of an infant

---

22. The witnesses were Billy Smith, an AA member; Joe Halley, a former lawyer and AA member; Luis Ortiz, an attorney and longtime friend;

and Sharon Leach, a friend who is a realtor in Bartlesville.

daughter he learned he had.[23] He obtained custody shortly after his daughter's first birthday. She lives with him and his two sons in a home he rents in Bartlesville.

¶ 16 Petitioner was asked about his compliance with Rule 9.1, RGDP.[24] He stated that at the time of his disciplinary suspension, he had no active clients because of his previous administrative suspension for non-payment of Bar dues.[25] At that time, he had three clients.[26] He admitted he did not timely file the affidavit required under Rule 9.1 to notify the Court he had taken care of his clients. He credits the Bar's investigator's diligence with his awareness that he lacked compliance. He filed the affidavit the morning of his PRT hearing. He admits he failed to comply with the filing requirement of Rule 9.1, although he believes he complied with the substantive requirements of the rule.

¶ 17 His plan for resuming the practice of law after reinstatement is to continue working part time at Lowe's on weekends and to take cases from local attorneys as they see fit to use him. He said this arrangement will allow him to integrate his family life with a busy employment schedule. While currently working at Lowe's on a full-time basis, his schedule rotates, sometimes requiring him to work late on week nights. When this happens, he spends time during the day with his daughter, running errands, getting her ready for day care. Then, either a friend or one of his sons transfers her to his home where a college student watches her until he gets home. Practicing law during the week and working at Lowe's part-time on the weekends will permit him to be home more evenings a week and provide stability and predictability for his family.

¶ 18 Petitioner testified that he had attended seminars sponsored by the Tulsa County Bar Association. He stated he had received 38 CLE hours in the last two years. He has done legal research for some lawyers and has read the Oklahoma Bar Journal. He represented himself in his disciplinary proceeding. As noted, he hired a lawyer to pursue his paternity suit. He appeared *pro se* in his custody case, but he did not give his Bar number in that case.

¶ 19 He stated he is a little "gun shy" about talking about legal matters, as this can be seen as the unauthorized practice of law. He says he is more diligent now about avoiding "coffee shop talk" and discussing what is going on at the court house than he was previously. He realizes that what happens in his community can become a story in the local newspaper.

¶ 20 The Presiding Master of the PRT raised the issue of Petitioner's taking on "full accountability." He responded, "Absolutely. I have to. There's no recovery without that

---

23. Petitioner had a romantic involvement with the child's mother during his suspension. Although the relationship ended, he contacted the mother after the delivery due date to check on the child. The mother told him the child was stillborn. Actually, she placed the baby for adoption and told the court she did not know the baby's father's identity. Petitioner was not notified of the adoption. After he learned of the baby's live birth, he obtained counsel to file a paternity action and represented himself in a custody case. Shortly after her first birthday, he obtained full custody of the child. The mother relinquished her parental rights during the adoption proceedings.

24. § 9.1. Notice to Clients; List of Other Bars to Which Admitted.

When the action of the Supreme Court becomes final, a lawyer who is ... suspended ... must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel ... The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule ... Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

25. Petitioner stated his administrative suspension was for non-payment of Bar dues, although this Court's previous opinion states it involved non-compliance with MCLE requirements. Both would be considered administrative suspensions.

26. He explained that after receiving notice of the suspension for non-payment of dues, he was immediately withdrawn from a criminal matter. He was relieved from a state felony case, and a civil-criminal matter involving his client was resolved within days of receiving notice that Petitioner could not appear on her behalf.

for me." When asked about the stress involved in practicing law and whether it could cause a relapse to drug and alcohol use, he answered that stress occurs in all aspects of life. He said AA has taught him how to deal with stresses and how to live life on life's terms, whether it involves a client, a relationship, health problems or challenges with children. He said you must deal with it proactively "by getting yourself in a condition to handle those things and you set your priorities." He agreed that no matter where the stress comes from, he has the tools to deal with it and relapsing is not part of the equation. He also stated he has passed every random drug test he has been given.

## STRONGER PROOF OF QUALIFICATIONS UPON REINSTATEMENT THAN WHEN FIRST ADMITTED

■ ¶ 21 Rule 11.4, RGDP,[27] requires that an applicant seeking reinstatement "will be required to present stronger proof of qualifications than one seeking admission for the first time." Moreover, the proof presented "must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant." Upon consideration of the reinstatement factors noted in *Albert, supra,* which weigh most heavily to a lawyer's incapacity,[28] i.e., 1) the extent of rehabilitation of the affliction attributable to the incapacity; 2) the conduct subsequent to the suspension and the treatment received therefor; and 3) the time which has elapsed since the suspension, we find Petitioner has met his burden of proof for reinstatement.

### 1. Extent of Petitioner's rehabilitation of the affliction attributable to the incapacity

¶ 22 Petitioner realized he needed help to change his life. He initially sought assistance from his family who responded generously by providing necessities for his care and return to health. Admitting his addiction to his parents and ex-wife and facing his professional responsibilities at the disciplinary hearing started him on the road to sobriety. He started working at Lowe's June 29, 2007, selling appliances, becoming very successful, with sales of $100,000 nearly every month.

¶ 23 Petitioner also testified that Alcoholics Anonymous (AA) saved his life. He stated he moved to Bartlesville in April, 2007. After that time, he was drunk twice: in August, 2007, and on January 30, 2008, when he had his last drink. He attended his first AA meeting on January 31, 2008. He testified he has had no drugs or alcohol since then. In the beginning Petitioner attended five to six AA meetings per week. He now attends two to three meetings per week. He still practices the 12-step program he learned at AA. During the first six months of his sobriety, he was restless every night around 11 p.m. Although he refrained from drinking and using drugs, it took his "body mechanics" that long to get accustomed to resting, rather than drinking or using drugs, at that time of day. During the first six months, he turned to AA if a crisis arose. During the next six month period the compulsion to drink and use drugs subsided. Now he calls his sponsor, prays, or meditates.

### 2. The conduct subsequent to the suspension and the treatment received

¶ 24 Petitioner stated he has slowly gotten the power of discernment and has begun to learn how to handle intuitively "things that used to baffle me." Just prior to his first anniversary of sobriety, he realized he had begun to discern and to be honest about what his role was in a crisis, or why he allowed someone else to upset him. Now he can catch himself if he starts to feel out of sorts. He asks himself what it is that is motivating his stress or anxiety in a particular situation. He testified that he went to AA to quit drinking and stop using drugs, and he accomplished that. In addition, however, he also found a fellowship and learned a "way to live life on life's term" and has received "the blessings of peace, serenity, a real sense of fellowship with my fellow man." He also

---

27. See note 16, *supra.*

28. See note 20, *supra.*

learned about his reaction to drugs and alcohol:

> I knew that I drank and used drugs atypically from the first time I drank alcohol. And it wasn't until I went to AA that they explained the compulsive nature of, the allergy to the alcohol. That's the first time in my life that I felt connected to my fellow man on that level.
>
> I thought I was the only person who went through that insanity when you introduce chemicals into their system and they show up hurting, like I did, and see people laughing, saying I've been there, it gets better. It's been an absolute miracle for me.

### 3. The time which has elapsed since the suspension

¶ 25 Petitioner was eligible to seek reinstatement on June 26, 2008. However, he did not file his petition until September 3, 2010. He said he was not ready. He went through periods where he just wanted to live. "I just want to survive what's going on today and that's why we talk about one day at a time and that's how it is." He said he slowly had a change of behavior, exhibiting healthier behavior. He said he attended AA almost daily at first, worked a steady job, spent time with his children, joined a gym and started attending church again. He now has a group of close-knit friends. Every co-worker knows his "story." He now has the "tools" to deal with stress: the 12 steps from his AA program.

### APPLICATION TO ASSESS COSTS

██ ¶ 26 The Bar has filed an application for the costs of this proceeding as allowed by Rule 11.1(c), RGDP, in the amount of $1310.10. As noted above, Petitioner previously agreed to be responsible for the expenses of this proceeding, including the cost of the original and one copy of the transcript which Rule 11.1(c) allows. The Bar's application requests a reimbursement of $406.60 for publication and investigation costs, as well as PRT expenses for witnesses and panel members. However, the Bar also requests the amount of $903.50 for transcript expense for an original and two certified copies, as well as other miscellaneous expenses charged by the office of the court reporter. Although Petitioner has not filed an objection to the Bar's request, this Court will not approve expenses which are not authorized by the Rules Governing Disciplinary Proceedings. We have, therefore, adjusted the "Transcript Expense" of $903.50 to $553.67, see *Matter of Reinstatement of Moss,* 1993 OK 16, 848 P.2d 564, for a total assessment of costs in the amount of $960.27. All remaining costs are assessed against the Respondent, Oklahoma Bar Association.

¶ 27 This Court is aware of previous applications for costs which have failed to comply with Rule 11.1(c), RGDP.[29] This Court admonishes the Bar to prepare future applications for costs in compliance with Rule 11.1(c).

### CONCLUSION

¶ 28 Petitioner has shown by clear and convincing evidence that he has fully complied with the requirements of Rule 11, RGDP, including stronger proof of his qualifications now than when he was first admitted to the Bar. The petition for reinstatement is granted. Petitioner is ordered to pay costs in the amount of $960.27 within 30 days of the date of this opinion.

¶ 29 **PETITION FOR REINSTATEMENT GRANTED; COSTS ASSESSED.**

COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ., concur.

TAYLOR, C.J., dissents.

---

**29.** See *In the Matter of the Reinstatement of Phillips,* 2011 OK 43, Case Number SCBD 5710, in which a request was made for the costs of an original and two certified copies of the transcript.