2012 OK 91

In the Matter of the REINSTATEMENT OF Brett Dean SANGER, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 5871.

Supreme Court of Oklahoma.

Nov. 6, 2012.

Gary A. Rife, Rife, Walters & Stanley, Oklahoma City, Oklahoma, for Petitioner.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

COMBS, J.

¶ 1 Applicant, Brett Dean Sanger was admitted to the Oklahoma Bar Association in 1993. Mr. Sanger submitted his resignation pending disciplinary proceeding to this Court and his name was stricken from the Roll of Attorneys by order of this Court on April 23, 2007, in *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Sanger*, 2007 OK 26, 164 P.3d 121.

¶ 2 This is Mr. Sanger's first attempt at reinstatement. He filed his petition for reinstatement to membership in the Oklahoma Bar Association and the practice of law pursuant to Rule 11.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A (RGDP), and a hearing on his application was had before a three-member Trial Panel of the Professional Responsibility Tribunal. The Panel concluded Mr. Sanger had presented sufficient evidence in support of his application to meet his burden of proof and had satisfied all requirements for reinstatement. The panel unanimously recommended his petition should be granted.

¶ 3 In Bar reinstatement proceedings, as in other disciplinary matters concerning the licensing of attorneys, the Supreme Court exercises its original and exclusive jurisdiction by applying a *de novo* standard of review. *Matter of Reinstatement of Pate*, 2008 OK 24, ¶ 3, 184 P.3d 528. Because the ultimate decision regarding reinstatement rests with this Court, the recommendations of the trial panel, while entitled to great weight are merely advisory in nature. *Matter of Reinstatement of Meek*, 2006 OK 14, ¶ 3, 130

P.3d 255; *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 18, 752 P.2d 1125, 1129.

¶ 4 The burden placed on an application seeking reinstatement to the practice of law is a heavy one and it is the same whether the applicant was disbarred or resigned from the bar pending disciplinary proceedings. *Matter of Reinstatement of Hardin*, 1996 OK 115, ¶ 8, 927 P.2d 545, 546. Reinstatement is not automatically granted on evidence, even if undisputed, showing the applicant has engaged in only proper conduct during suspension; an applicant must affirmatively establish that if reinstated his or her conduct will conform to the high standards required of a member of the Bar. *Matter of Reinstatement of Hanlon*, 1993 OK 159, ¶ 12, 865 P.2d 1228. Rule 11.4 RGDP requires the applicant in a reinstatement proceeding to bear the burden of showing by clear and convincing evidence that his or her application warrants reinstatement. In whole, Rule 11.4 states:

An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

¶ 5 Rule 11.5 of the RGDP requires the PRT to make specific findings regarding (1) "[w]hether or not an applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association," (2) "[w]hether or not an applicant has engaged in the unauthorized practice of law during the period of suspension," and (3) "[w]hether or not an applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma."

¶ 6 Because this Court views applications seeking reinstatement to the practice of law with utmost seriousness and it is our primary duty to safeguard the interests of the public, the courts and the legal profession, we have determined that consideration of the following additional factors is required in our review of the evidence: (1) the present moral fitness of the applicant; (2) the applicant's demonstrated consciousness of wrongful conduct and the disrepute which that conduct brought to the profession; (3) the extent of applicant's rehabilitation; (4) the seriousness of the original misconduct; (5) applicant's conduct after the resignation; (6) the time which has elapsed since the resignation or discipline; (7) applicant's character, maturity and experience at the time of discipline or resignation; (8) applicant's present competence in legal skills. *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130. See also *Matter of Reinstatement of Elias*, 1988 OK 86, ¶ 16, 759 P.2d 1021 and *Matter of Reinstatement of Pate*, 2008 OK 24, ¶ 6, 184 P.3d 528. All these factors are relevant and important, however in a situation such as this which stems from an attorney's abuse of alcohol, we must be particularly concerned with evidence showing the extent of applicant's rehabilitation, his conduct since he resigned, the treatment received for the condition and the time which has elapsed since the resignation. *Matter of Reinstatement of Hanlon*, 1993 OK 159, ¶ 9, 865 P.2d 1228, 1231. Each application for reinstatement to the Bar Association must be considered on its own merits and will fail or succeed on the evidence presented and the particular circumstances of that individual's case. *Matter of Reinstatement of Cantrell*, 1989 OK 165, ¶ 7, 785 P.2d 312, 314.

¶ 7 We concur with the panel's recommendation to approve Mr. Sanger's petition for reinstatement to membership in the Oklahoma Bar Association and the practice of law. Based on our *de novo* review of the record, we find Mr. Sanger did carry his heavy burden of showing by clear and convincing evidence that he is deserving of reinstatement as he meets all the requisite criteria for reinstatement set forth above and we find that if reinstated his conduct will meet the high standards required of members of the Bar.

¶ 8 The record reveals the following. Mr. Sanger graduated from Oklahoma City University School of Law in December 1992 and was admitted to the practice of Law on April 29, 1993. He engaged in the private practice of law until his resignation pending disciplinary proceeding was tendered on October 18, 2006. The resignation was accepted by Order of this Court on April 23, 2007. The resignation followed the investigation of multiple grievances. The grievances were the result of his chronic alcoholism and the failure to properly attend to client affairs. Immediately after his resignation on Wednesday, October 18, 2006 and prior to entering the Clay Crossing Foundation in Maud, Oklahoma, Mr. Sanger spent the next several days beginning on Thursday, October 19, 2006 working at the Oklahoma Bar Center with OBA investigator Dorothy Walso. He helped Ms. Walso review all of this open client files and prepared letters which were mailed by the OBA to his clients notifying them of his resignation in accordance with Rule 9.1 of the RGDP. All of the requirements of Rule 9.1 except the filing of the affidavit were met and the affidavit was filed later.

¶ 9 After tendering his resignation, on the following Monday, October 23, 2006, Mr. Sanger entered an extensive ninety day inpatient alcohol treatment program at Clay Crossing Foundation in Maud, Oklahoma. He successfully completed the program on January 19, 2007. Since completion of the recovery program, Mr. Sanger has maintained uninterrupted and total sobriety while being gainfully employed in law related activities. He

worked in the oil and gas land business. Since December 2010 he has worked as a law clerk for the Barnes & Lewis law firm in Oklahoma City whose practice includes complex class action litigation brought on behalf of royalty owners. He has maintained his competency in the law and has a favorable outlook for continued sobriety through continuing recovery efforts and participation in Alcoholics' Anonymous and the Lawyer's Helping Lawyers program sponsored by the Oklahoma Bar Association. Mr. Sanger presently possesses the legal competency, moral character and integrity to return to the legal profession as a licensed lawyer. Mr. Sanger has expressed remorse for his prior misconduct and he has made amends where possible and accepted full responsibility for his prior misconduct to the fullest extent possible.

¶ 10 Mr. Sanger's October 18, 2006, affidavit filed in support of his application seeking our approval for his resignation pending disciplinary proceedings reflects multiple grievances had been filed against him with the Office of General Counsel, alleging he (1) furnished alcoholic beverage to a person under 21 years of age; (2) he had a felony charge of driving under the influence of alcohol; (3) he was transporting a firearm while under the influence of alcohol; (4) that he failed to finish a probate; (5) that he neglected a criminal matter; (6) that he was suspended from practice before the IRS for failure to pay all taxes owed; (7) that he had an inappropriate relationship with a client; (8) he submitted forged AA meeting signatures. His offenses were obviously of a very serious nature. They involved criminal actions as well as significant breaches of a lawyer's duties to his client and showed grievous disregard for his professional responsibilities. These actions violated Rules 1.1, 1.3, 1.4, 1.5, 1.7, 1.8, 1.15, 3.2, 8.1 and 8.4 of the Oklahoma Rules of Professional Conduct 5 O.S.2001, Ch. 1 App. 1–A, as well as violations of Rules 1.3, 1.4, 5.2 and 7.7 of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001. Ch.1, App. 3–A.

¶ 11 Before the trial panel, Mr. Sanger testified that his failure to properly attend to the affairs of his clients in a lawful and professional manner resulted from long-term alcohol abuse. Conceding he was an alcoholic, Mr. Sanger was very open and honest with the panel in his testimony. He described in detail his life before and after his resignation and offered no excuses or rationalizations for his behavior. He accepted all responsibility for his failing, professional and personal, and their consequences. He did not minimize the seriousness of his offenses, and he fully acknowledged and expressed remorse for the disfavor and disrepute his actions had cast upon his profession and the judiciary.

¶ 12 In 2006, Mr. Sanger became fully dedicated to recovery. He successfully completed the program at Clay Crossing Foundation in Maud, Oklahoma on January 19, 2007. Since completion of the recovery program, Mr. Sanger has maintained uninterrupted and total sobriety. He regularly attends Alcoholics Anonymous meetings and is currently involved with the Lawyer's Helping Lawyers sponsored by the Oklahoma Bar Association. He also stated that he would like to be a mentor in the program at some point.

¶ 13 Mr. Sanger has worked as a law clerk for the Barnes & Lewis law firm in Oklahoma City whose practice includes complex class action litigation brought on behalf of royalty owners. It was testified to at trial that if he is readmitted he will work as an associate with this firm. His supervisor at the firm testified Mr. Sanger handles the stress of the complex litigation better than anyone else at the firm and would be proud to have him work as an associate.

¶ 14 Mr. Sanger has paid back all money expended by the Client Security fund. Testimony at the hearing also showed Mr. Sanger is fully dedicated to his recovery and has helped many other people with their struggles with alcohol addiction. Every attorney who testified indicated they would have no qualms referring clients to Mr. Sanger.

¶ 15 The Report of the Trial Panel unanimously concluded that Mr. Sanger had established by clear and convincing evidence all requirements necessary for his reinstatement to membership in the Oklahoma Bar Association were satisfied and recommended Mr.

Sanger be reinstated to the practice of law. The Oklahoma Bar Association does not object to his reinstatement. Under the particular facts and circumstances reflected in the evidence introduced in this matter, we agree with the recommendation of the Professional Review Tribunal and the Oklahoma Bar Association that this applicant has satisfied all requirements for reinstatement by clear and convincing proof and his petition should be granted. Costs in the amount of $1,919.63 are to be paid within ninety days from the date this opinion becomes final.

**REINSTATEMENT GRANTED**

All Justices concur.

TAYLOR, C.J. concur:

This case is an exceptional example of the clear and convincing evidence necessary to meet the extremely high requirement of Rule 11.4 RGDP.