OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF MCLAUGHLIN

 

 
 

 
 IN THE MATTER OF THE REINSTATEMENT OF MCLAUGHLIN
2018 OK 41
Case Number: SCBD-6517
Decided: 05/15/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 41, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF WILLIAM MARTIN MCLAUGHLIN, TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS
PROCEEDING FOR REINSTATEMENT
TO THE OKLAHOMA BAR ASSOCIATION
Â¶0 Petitioner, William Martin McLaughlin, filed a petition seeking reinstatement as a member of the Oklahoma Bar Association. McLaughlin was suspended under Rule 10.2, Rules Governing Disciplinary Proceedings, and subsequently stricken from the rolls for non-compliance with Mandatory Continuing Legal Education and failure to pay bar dues. After a hearing, the Professional Responsibility Tribunal unanimously recommended reinstatement. Upon de novo review, we concur with the PRT's findings and approve Petitioner's reinstatement; however, this ruling is subject to McLaughlin's payment of costs in the amount of $25.60 and any unpaid bar dues within thirty (30) days from the date this opinion becomes final.
PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED
Tom M. Cummings, Oklahoma City, Oklahoma, for Petitioner.
Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.
GURICH, VCJ.:
Facts and Procedural History
Â¶1 William Martin McLaughlin graduated from Oklahoma City University School of Law in May of 1988. Following successful completion of the bar examination, he was admitted to the Oklahoma Bar Association (hereinafter "OBA") on October 5, 1988. For the first seven years in practice, McLaughlin resided in Stillwater and worked as an assistant district attorney for Logan and Payne Counties. McLaughlin left the district attorney's office in 1995, to begin a private practice.
Â¶2 In September 1997, McLaughlin was involved in an automobile accident which severely injured his left arm. Prior to the accident, McLaughlin had been a "scratch" golfer, but the extensive injury ended his ability to play competitive golf. Consumed with physical pain and depression, McLaughlin began self-medicating with alcohol. As his use of alcohol escalated, McLaughlin accumulated multiple criminal charges. During the hearing before the Professional Responsibility Tribunal (hereinafter "PRT"), McLaughlin testified that he had been charged in sixteen separate criminal cases, all of which were connected to his abuse of alcohol. The vast majority of these criminal charges were for driving under the influence or public intoxication.
[1]
Â¶3 On January 30, 2007, the OBA filed a Complaint against McLaughlin asserting he should be immediately suspended pursuant to Rule 10 under the Rules Governing Disciplinary Proceedings
[2] (hereinafter "RGDP"), and subject to discipline under RGDP Rule 7. The OBA's Complaint alleged McLaughlin: 1) should be immediately suspended pursuant to RGDP Rule 10, due unfitness to practice law caused by alcoholism; and 2) was subject to discipline under Rule 7 based on his guilty pleas in several criminal cases. During 2007, McLaughlin was the subject of six different OBA investigations; five of the matters were predicated on grievances levied by former clients and one was brought independently by OBA General Counsel.
Â¶4 On April 23, 2007, this Court issued an order suspending McLaughlin's OBA license as a result of his being "personally incapable of practicing law within the meaning of Rule 10."
[3] Subsequently, orders were entered, striking McLaughlin's name from the OBA rolls for non-payment of dues and non-compliance with continuing legal education requirements.[4] Following an application by the OBA, we issued another order on February 14, 2011, finding the April 2007 suspension was a final adjudication of McLaughlin's status. Additionally, the order dismissed any Rule 7 charges and informed McLaughlin that any future attempt to qualify for reinstatement would require him to "meet the burdens of both Rule 10.11 and 11.4 of the RGDP."[5] Because this Court dismissed the Rule 7 charges, McLaughlin was never subjected to disciplinary action for his criminal misconduct.
Â¶5 On May 31, 2017, McLaughlin filed a petition seeking reinstatement with the OBA. A hearing before the Professional Responsibility Tribunal was held on August 17, 2017. OBA investigator, Rhonda Langley, testified before the panel that she had conducted numerous background checks on McLaughlin in preparation for the reinstatement hearing. Her findings included the following: (1) a claim of $500.00 had been made against the Client Security Fund by one of McLaughlin's former clients and this sum had been repaid; (2) McLaughlin was not on probation for any of his criminal cases; (3) all fees due and owing to the OBA had been paid in full; and (4) McLaughlin had been the subject of six grievances and he had fully responded to each matter.
[6] Multiple witnesses testified regarding McLaughlin's sobriety, his remorse and humiliation for his abhorrent behavior while drinking, and the marked changes in McLaughlin as a result of his rehabilitation and recovery through Alcoholics Anonymous.
Â¶6 In accordance with RGDP Rules 11.4 and 11.5, the PRT issued the following findings in its report: (1) McLaughlin demonstrated, by clear and convincing evidence, that he possesses the requisite good moral character for re-admission to the OBA; (2) McLaughlin established by clear and convincing evidence that he has not engaged in the unauthorized practice of law in the State of Oklahoma; and (3) McLaughlin demonstrated by clear and convincing evidence that he possesses the competency and learning in the law required for admission to practice law; and (4) despite his suspension of more than ten years, McLaughlin should not be required to take and successfully pass the Oklahoma bar examination. The panel unanimously recommended McLaughlin be reinstated.
Analysis
Â¶7 We are vested with a non-delegable, constitutional duty to regulate the practice of law. In Re Reinstatement of Mumina, 2009 OK 76, Â¶ 7, 225 P.3d 804, 808. Our primary objectives when weighing an attorney's request for reinstatement are protecting the public welfare and ensuring reinstatement would not adversely affect the Bar. In Re Reinstatement of Page, 2004 OK 49, Â¶ 3, 94 P.3d 80, 82 (citing In Re Reinstatement of Cantrell, 1989 OK 165, Â¶ 2, 785 P.2d 312, 313). Furthermore, factual findings and legal conclusions set forth in the PRT's report are merely advisory and the panel's conclusions are not binding on the Court. In Re Reinstatement of Kerr, 2015 OK 9, Â¶ 6, 345 P.3d 1118, 1121. This Court conducts a review of PRT findings by "exercis[ing] independently its original jurisdiction and appl[ying] a de novo standard of review." In Re Reinstatement of Hird, 2008 OK 25, Â¶ 3, 184 P.3d 535, 537. The focus of the Court is not on a person's past, but rather on the person's current condition and future consequences of reinstatement. State ex rel. Oklahoma Bar Ass'n v. Albert, 2007 OK 31, Â¶ 12, 163 P.3d 527, 533.
Â¶8 An attorney seeking reinstatement after suspension due to personal incapacity must utilize the procedures outlined in RGDP Rule 11. Id. Â¶ 13, 163 P.3d at 533. Thus, RGDP Rule 11.5 requires McLaughlin to demonstrate by clear and convincing evidence that: 1) he possesses good moral character entitling him to be admitted to the OBA; 2) he has not engaged in the unauthorized practice of law during the period of suspension; and 3) he possesses the competency and learning required for admission to the practice of law. Failure to establish any of these essential conditions necessitates denial of reinstatement. Moreover, because McLaughlin's suspension was predicated on his incapacity due to alcoholism, he must present clear and convincing evidence that his "condition is no longer a threat rendering the applicant personally incapable of practicing law." Id.; see also RGDP Rule 10.11 ("petitioner will be required to supply such supporting proof of personal capacity as may be necessary.")
Â¶9 In evaluating a bid for readmission to the OBA, this Court weighs certain factors, including but not limited to: 1) the applicant's present moral fitness; 2) the applicant's understanding of the wrongfulness and disrepute their unprofessional conduct brought upon the legal profession; 3) the extent of applicant's rehabilitation; 4) the original misconduct's seriousness; 5) the applicant's conduct after resignation; 6) time elapsed since the resignation; 7) the applicant's character, maturity, and experience when suspended; and 8) the applicant's present legal competence. Albert, Â¶ 14, 163 P.3d at 534.
Â¶10 Our primary focus in cases involving incapacity stemming from drug or alcohol abuse is the extent of rehabilitation from the incapacity, the conduct subsequent to the suspension and treatment received for the condition, and the time which has elapsed since the suspension. Id. It is essential that the record demonstrate the applicant has, for a significant amount of time, maintained sobriety and refrained from abusing drugs or alcohol; passed random drug and alcohol tests; immersed himself/herself in a 12-step program; sought necessary counseling; and participated in Lawyers Helping Lawyers. Id. Â¶ 15, 163 P.3d at 534. Only after an applicant has diligently pursued and maintained his or her sobriety, and has met the other requirements associated with reinstatement, may a petition seeking reinstatement be granted. Id.
Â¶11 Following his Rule 10 suspension, McLaughlin began efforts to achieve sobriety. While he abstained from alcohol for roughly two years, McLaughlin did not initially attend Alcoholics Anonymous, nor did he implement any other 12-step program. As a result of this omission, McLaughlin continuously relapsed. It wasn't until July 18, 2011, that McLaughlin was finally able to stop drinking alcohol. Following his last drink, McLaughlin began working the 12-steps of AA, and has been able to maintain his sobriety for more than six years.
Â¶12 McLaughlin accumulated multiple criminal charges between 2004 and 2011. Each of the criminal matters formed sufficient basis for disciplinary action by this Court; however, our prior order dismissing the Rule 7 case precludes imposition of discipline. Nevertheless, we have considered these criminal acts for purposes of determining whether reinstatement is justified. There can be no doubt that McLaughlin's actions were reprehensible and reflected negatively on the legal profession. Each time McLaughlin sat behind the wheel of his car while under the influence, he put lives of innocent Oklahoma citizens in jeopardy. Additionally, McLaughlin, while intoxicated, sought sexual favors from a prospective client. The totality of these criminal acts would have certainly warranted disbarment. All of these transgressions, however, were directly attributable to McLaughlin's alcoholism.
Â¶13 Based on the evidence presented at the PRT hearing, the record conclusively establishes dramatic positive changes in McLaughlin's life that were brought about through sobriety. Collectively the record before us demonstrates McLaughlin's present moral character to practice law. While testifying before the PRT, McLaughlin acknowledged the disrepute his behavior brought on the legal profession, and he expressed remorse for his unprofessional conduct. McLaughlin's rehabilitation has been extensive, allowing him to maintain sobriety over a period of more than six years. He has been active in both AA and OBA's Lawyers Helping Lawyers program. Numerous witnesses testified that over the past six years McLaughlin has mentally and physically rehabilitated himself.
[7]
Â¶14 For example, McLaughlin's Alcoholics Anonymous sponsor testified that he would hire McLaughlin as his lawyer if he was ever in trouble and McLaughlin had his license back. McLaughlin's senior case manager at the Pershing Center testified, "[McLaughlin] is a man of character," and she would absolutely recommend McLaughlin for reinstatement. Furthermore, McLaughlin's ex-wife testified the she believes he will not relapse again because he treats his sobriety "like oxygen and food, [and] that [it] is the most important thing, because [McLaughlin] has told [her] many times if he doesn't maintain his sobriety, then he will lose everything."
[8]
Â¶15 The evidence also demonstrates McLaughlin refrained from engaging in the unauthorized practice of law during his suspension. In 2011, McLaughlin began working as a legal assistant for attorney Clyde Anderson. Aware of his suspension, Anderson conditioned the employment arrangement on an agreement which imposed specific restrictions, including: (1) McLaughlin was prohibited from directly or indirectly dealing with clients; (2) McLaughlin was not allowed to participate in any legal proceeding (including appearing in court, depositions or mediation, etc.) or from transacting any client matter with a third party; (3) McLaughlin could not give clients legal advice in any manner; and (4) McLaughlin was prohibited from handling client funds.
[9] Additionally, McLaughlin's work space was situated so as to minimize his contact with incoming clients.
Â¶16 Finally, the evidence supports a finding that McLaughlin "possesses the competency and learning in the law" required by RGDP Rule 11.5(c). McLaughlin worked as a legal assistant for six years preceding his reinstatement effort. He studied the Oklahoma Bar Journal, discussed legal matters with Anderson, and amassed over 135 continuing legal education ("CLE") hours. McLaughlin adequately demonstrated he possesses the competency and learning required for re-admission to practice law. We believe the evidence displays sufficient competency to overcome Rule 11.5(c)'s presumption that McLaughlin be required to take the bar examination.
[10]
Â¶17 McLaughlin's case is analogous to other cases decided by this Court when considering the reinstatement of an attorney who has incurred multiple drug and/or alcohol related offenses. Most similar to McLaughlin's situation are the Albert case and In Re Reinstatement of Whitworth, 2011 OK 79, 261 P.3d 1173. In Albert, the attorney was suspended pursuant to Rule 10 due to drug and alcohol addiction. Albert, Â¶ 4, 163 P.3d at 531. Like McLaughlin, Albert had endured a traumatic event that sparked his addiction. He lost his father and began suffering marital problems, which caused Albert's drug and alcohol abuse to begin. Id. Â¶ 2, 163 P.3d at 531. It was not until Albert implemented the 12-step program of Alcoholics Anonymous that he began his path to reinstatement. Id. Â¶ 17, 163 P.3d at 534. At his reinstatement hearing, Albert established that he had fully recovered from his alcoholism by implementing the proper rehabilitation methods, and that his conduct would conform to the high standards of the legal profession. Albert, Â¶ 18, 163 P.3d at 534.
Â¶18 In the Whitworth case, an attorney had been suspended pursuant to Rule 10 for his alcohol addiction. Whitworth, Â¶ 1, 261 P.3d at 1174. At his reinstatement hearing before the PRT, Whitworth presented a litany of evidence supporting his reinstatement. Id. Like McLaughlin, he was an active participant in AA. Whitworth also showed that he could sustain a lengthy period of sobriety before applying for reinstatement, waiting two years from his last drink before petitioning for reinstatement. Id. Â¶ 25, 261 P.3d at 1180. Both the Albert and Whitworth cases reflected dramatic recovery, similar to the evidence presented by McLaughlin in this case. See also In re Reinstatement of Tully, 2004 OK 44, Â¶ 2, 92 P.3d 693, 693 (attorney had been charged with "one count of Felonious Possession of a Controlled Substance and one misdemeanor count of Carrying a Concealed Weapon" and was reinstated on a showing of rehab attendance and other treatment programs.); In re Reinstatement of Johnson, 2007 OK 46, 162 P.3d 922 (Johnson was convicted of one count of attempting to pass a steroid, three felony counts of use of a telephone to facilitate the distribution of marijuana, and one felony count of conspiracy to distribute marijuana. The Court, after hearing evidence of his change in character, ordered his reinstatement.); In re Reinstatement of Sanger, 2012 OK 91, Â¶ 8, 288 P.3d 935, 938 (Sanger resigned due to grievances filed as a "result of his chronic alcoholism and the failure to properly attend to client affairs." The Court found Sanger was duly committed to being sober and ordered his reinstatement.).
Â¶19 Perhaps the most analogous case to McLaughlin's bar matter was decided in State ex rel. Okla. Bar Ass'n v. McBride, 2007 OK 91, 175 P.3d 379. Although not a reinstatement case, McBride involved an attorney suffering from alcoholism who had been charged with multiple drug and alcohol offenses. Id. Â¶ 2, 175 P.3d at 380-82. The OBA brought disciplinary proceedings pursuant to RGDP Rules 6 and 7; additionally, the OBA sought to suspend McBride's license for personal incapacity under RGDP Rule 10. Id. Â¶ 3, 175 P.3d at 382. Despite accumulating a significant number of drug and alcohol convictions, we determined (1) McBride was not incapacitated; (2) he had successfully addressed his alcohol problem, and had taken significant steps toward achieving and maintaining his sobriety; and (3) McBride's criminal acts did not result in neglect of client matters or client financial loss.[11] Ultimately, this Court publicly censured McBride and further issued a deferred suspension of two years and one day.
Â¶20 In the present case, each of McLaughlin's criminal acts was attributable to his alcoholism. We believe the uncontroverted evidence indicates all of McLaughlin's ethical misconduct was directly linked to his alcohol abuse. The record clearly reflects that so long as McLaughlin maintains his sobriety, he is an excellent lawyer and law abiding citizen. Prior to his descent into an alcoholic abyss, McLaughlin maintained a spotless record as an Oklahoma attorney. He is to be commended on achieving six, and now nearly seven, years of sobriety. Although one of McLaughlin's criminal cases involved a prospective client, we believe this isolated incident will not be repeated so long as McLaughlin continues without misstep in his recovery. As we noted in McBride:
Discipline imposed in cases involving alcohol-related crimes has ranged from the severe, when coupled with harm to clients, to censure, when no clients were involved. Probationary periods have often been imposed in cases of alcohol-related offenses. While alcoholism alone is not enough to mitigate discipline, the fact that an attorney recognized his or her problem, sought and cooperated in treatment and was willing to undergo supervision has convinced the Court that severe discipline need not be imposed.
Id. Â¶ 23, 175 P.3d at 387.
Conclusion
Â¶21 The evidence in this case supports a finding that McLaughlin is no longer suffering from an incapacity which would preclude him from practicing law. Furthermore, Petitioner William McLaughlin has established: by clear and convincing evidence: 1) he possesses good moral character, (2) he has not engaged in the unauthorized practice of law during his suspension, and (3) he possesses the competency and learning required for admission to practice law. We believe his conduct since achieving sobriety has and will continue to conform to the high standards required of Oklahoma Bar Association members. Respondent is hereby reinstated to the rolls of the OBA. He is ordered to pay the costs of this proceeding in the amount of $25.60 within thirty (30) days after the effective date of this opinion.
PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED
Â¶22 Gurich, V.C.J., Kauger, Winchester, Edmondson, Colbert, Reif, Darby, JJ., concur.
Â¶23 Combs, C,J., Wyrick, J., dissent.
FOOTNOTES
[1] In one criminal case, Payne County District Court Case No. CM-2007-749, McLaughlin was charged and convicted of soliciting a lewd act. According to testimony and exhibits in the record, McLaughlin was inebriated and solicited sexual activity from a prospective client. McLaughlin pleaded no contest to the charge and was sentenced to six months in the county jail.
[2] 5 O.S.2011, ch. 1, app. 1-A.
[3] McLaughlin filed a document entitled Consent to Entry of Order of Interim Suspension and Answer to Complaint, wherein he waived any objection to immediate suspension under RGDP Rules 7 and 10. On April 13, 2007, McLaughlin filed an amended consent, acknowledging his entry into a treatment facility and his present inability to practice law.
[4] See In the Matter of the Striking of Names of Members of the Oklahoma Bar Association, 2010 OK 64; and In the Matter of the Striking of Names of Members of the Oklahoma Bar Association, 2010 OK 63.
[5] Order, Feb. 14, 2011, SCBD No. 6517.
[6] Langley also testified that she attempted to contact each of the former clients, but each former client she contacted either did not wish to cooperate or could not be reached.
[7] Among those who testified at the PRT hearing were: McLaughlin's ex-wife, a licensed professional counselor, a member of Lawyers Helping Lawyers, a senior case manager from the Pershing Center, McLaughlin's Alcoholics Anonymous sponsor, an Administrative Law Judge, two practicing attorneys, and an investigator for the Oklahoma Bar Association's General Counsel.
[8] Tr. Reinstatement Hr'g, Page 66, Lines 19-21, Aug. 17, 2017.
[9] Anderson showed considerable prudence and exercised tremendous care by placing his own limitations on McLaughlin's job duties. The restrictions served to protect both individuals and the public from potential ethical transgressions. See In re Reinstatement of Blake, 2016 OK 33, 371 P.3d 465 (Gurich, J. concurring).
[10] RGDP Rule 11.5(c) provides "any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination." However, an applicant can overcome this requirement by presenting "clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency." Id.
[11] It should be noted, however, that McBride was forced to arrange representation for two clients in matters he was unable to attend while in jail due to a DUI charge. Id. Â¶ 22, 175 P.3d at 387.